1  EDWARD M. WOLKOWITZ (State Bar. No. 68298)
   KRIKOR J. MESHEFEJIAN (State Bar No. 255030)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   Email: emw@lnbyb.com; kjm@lnbyb.com
5
6  Attorneys for Rosendo Gonzalez,
   Chapter 7 Trustee
7

8

9              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
10                 LOS ANGELES DIVISION

11

12  In re                          )  Case No. 2:10-bk-27883-VK
                                    )
13  ART HOVSEPIAN,                  )  Chapter 7
                                    )  [Converted from Chapter 13]
14                                  )  [Assigned to Hon. Peter H. Carroll]
                                    )
15              Debtor.             )
                                    )  CHAPTER 7 TRUSTEE'S MOTION FOR
16                                  )  ORDERS:
                                    )  (1) APPROVING SALE OF REAL
17                                  )      PROPERTY; AND
                                    )  (2) APPROVING PROPOSED
18                                  )      OVERBIDDING PROCEDURE
                                    )
19                                  )
                                    )  SUPPORTING DECLARATIONS
20                                  )
                                    )
21                                  )  **Date:  February 8, 2011**
                                    )  **Time:  9:30 a.m.**
22                                  )  **Place:  Courtroom 1539**
                                    )         **255 East Temple Street**
23                                  )         **Los Angeles, California**
                                    )
24                                  )
                                    )
25                                  )
                                    )
26  _____)

27

28

**TO THE HONORABLE PETER CARROLL, UNITED STATES BANKRUPTCY JUDGE:**

Rosendo Gonzalez, Chapter 7 Trustee for the bankruptcy estate of Art Hovsepian (the "Debtor"), hereby moves the Court for an order (1) approving the sale, pursuant to 11 U.S.C § 363(b)(1), of two parcels of adjoining real property located at 400 North Glenoaks and 415 Magnolia, Burbank California (collectively the "Property"), which is property of the Debtor's estate; and (2) approving the Trustee's proposed overbidding procedures.

The Trustee has obtained seven offers for the purchase of the Property, ranging from approximately $850,000 to $1,250,000. During the past five months the Trustee has marketed the Property, received offers, provided counteroffers, and has ultimately accepted (subject to Court approval) the offer submitted by Dr. Hamlet Avanesian/Cathy Avanesian (the "Buyer").

The essential terms of the proposed sale are as follows:

1.    <u>Purchase Price</u>:        The proposed purchase price is $1,015,000.

2.    <u>Condition of Property</u>:        The Property is being sold on an **"as-is, where-is" basis**. The Trustee makes no representations or warranties, whether express or implied, of any kind as to the condition of the Property. Potential purchasers are advised to conduct their own due diligence investigation regarding all relevant facts in connection with any purchase.

3.    <u>Overbid Procedures</u>:   No overbid procedures have been established by the Court. The Trustee suggests that the minimum overbid price be $1,025,000, with subsequent overbids in increments of at least $5,000. The Trustee also suggests that any qualified bidder must contact the Trustee at least twenty-four (24) hours in advance of the hearing on the Sale Motion, and submit, before the time of the hearing on the Sale Motion, a deposit for the purchase of the Property in the amount of at least $100,000. The Trustee further suggests that, in order to participate in bidding, any bidder must also provide, to the reasonable satisfaction of the Trustee, evidence of a pre-approved loan based on the buyer's written application and credit report, or have cash, and evidence of same, in an amount necessary to consummate the sale at the time of hearing. The Court has not yet approved these bidding procedures, but the Trustee will request that the Court approve these procedures at the hearing on the Sale Motion.

4.    <u>Close of Sale</u>: Escrow shall close within thirty (30) days of a hearing date approving the sale of the Property.

5.    <u>Other Terms of Proposed Sale</u>:    The Trustee is currently negotiating with the Buyer and tenants on the Property regarding the status of existing leases and the terms of occupancy going forward.

**FOR A COMPLETE STATEMENT OF THE TERMS AND CONDITIONS OF THE SALE, PLEASE REFER TO THE COMMERCIAL PROPERTY PURCHASE AGREEMENT AND RELATED OFFER SHEETS WHICH ARE ATTACHED AS EXHIBIT "1" TO THE DECLARATION OF MIKE TALLEDA.**

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order:

(1) Approving the sale, pursuant to 11 U.S.C § 363(b)(1), of the Property which is property of the Debtor's estate;

(2) Approving the Trustee's proposed overbidding procedure; and

(3) Granting such further relief as the Court deems just and proper.

DATED:  January 18, 2011

Respectfully submitted,

LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.


By:___/s/ *Krikor J. Meshefejian*_____
        EDWARD M. WOLKOWITZ
        KRIKOR J. MESHEFEJIAN
        Attorneys for Rosendo Gonzalez
        Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Since the Chapter 7 Trustee's appointment, the Trustee has actively marketed the adjoining commercial properties located at 400 North Glenoaks and 415 Magnolia, Burbank California (collectively, the "Property"). The Trustee has received seven different offers on the Property and, after extensive negotiations with potential purchasers, has accepted (subject to Court approval), an offer for the purchase of the Property. The Property is an asset of the bankruptcy estate.

The Trustee hired a real estate broker (the "Broker") to market the sale of the Property. The Broker obtained six offers for the purchase of the Property (the Trustee directly received an offer prior to the employment of the Broker). Dr. Hamlet Avanesian/Cathy Avanesian (the "Buyer") has made what the Trustee believes to be the highest and best offer for the Property, in the amount of $1,015,000. The offer by the Buyer has no financing contingencies, and the Buyer has already delivered to the Trustee a $101,500 cash deposit for the purchase of the Property. The Trustee, in his business judgment, believes it is in the best interests of the estate and creditors to sell the Property to the Buyer. Secured creditors with allowed claims will be paid in full at close of escrow. The sale of the Property shall be subject to overbidding, and the sale will generate adequate funds to pay all secured creditors in full, while leaving additional cash for the benefit of the Debtor's creditors. The Trustee is currently negotiating with the Buyer and tenants on the Property regarding the status of existing leases and the terms of occupancy going forward.

From a financial perspective, the sale of the Property can be summarized as follows:

| SALE PROCEEDS | $1,015,000.00 |
|---|---|
| Payment to M.S. Hungerford and E.M. Scala, Trustees of the Nipotini Investment trust dated March 13, 2006 (the "Trust") | $753,598 (pursuant to Claim No. 6 filed by the Trust) |
| Real Property Taxes | $50,730.28 based on preliminary title report, although Los Angeles County Treasurer and Tax Collector has filed a proof of claim asserting that only $21,256.72 is due and owing |
| Real Estate Commission of 6% | $60,900 |

| Escrow Fee | $20,200 (estimated) |
| Funds for the benefit of the Debtor's estate | $129,503.72 |

The sale of the Property will therefore pay in full the secured claim of the Trust, pay in full outstanding real property taxes, and generate funds for the benefit of creditors of the Debtor's estate. If an overbid generates additional funds, then the funds available to creditors of the estate will increase.

The Property has been actively marketed, and the sale of the Property will be subject to overbids. The Trustee has received over 25 inquires, at least 10 serious expressions of interest which included a site visit, and seven offers, and has determined that the offer presented to the Trustee by the Buyer is the highest and best offer for the Property. The sale of the Property as set forth herein will generate funds for the estate which would otherwise not be available to the estate. Accordingly, the sale of the Property is in the best interest of the estate and should be approved by the Court.

## II.

## STATEMENT OF FACTS

**A.    Case Background.**

1.    The Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on May 5, 2010. This case was converted to one under Chapter 7 of the Bankruptcy Code on June 8, 2010, and Rosendo Gonzalez was appointed as Chapter 7 Trustee.

2.    The Debtor is the owner of the Property. The Property consists of two adjoining lots, located at 400 N. Glenoaks Blvd. ("Glenoaks"), and 413 E. Magnolia Blvd ("Magnolia"). Magnolia is approximately 590 square feet in size and Glenoaks is approximately 2900 square feet in size.

**B.    Tenants.**

3.    There appear to be three parties which are currently occupying the Property, as follows:

a.    Alek Hovsepian, the Debtor's son, who allegedly has a ten-year lease with the Debtor, with allegedly two five year lease extension options, is occupying

approximately 1280 square feet of Glenoaks, and is apparently operating a Verizon Wireless store from that location (the "Verizon Lease").

b.  The Debtor is currently occupying the remaining space at Glenoaks, where the Debtor is running a plumbing supply store.  The Debtor has no lease agreement and will vacate the premises upon a sale of the Property.

c.  Modern Nails is currently occupying Magnolia and currently has a month to month tenancy (the "Modern Nails Lease").

4.  The Buyer has required as a condition of purchasing the Property that any tenants occupying the Property have at most a month to month lease.  The Trustee is currently negotiating with Alek Hovsepian regarding the Verizon Lease and continued occupancy of the Property.  The Trustee is also negotiating with the Buyer regarding this requirement.  The Trustee believes that an agreement could be reached, and believes that, in order to prevent the loss of interest in the purchase of the Property, it is prudent to proceed with this Motion at this time, despite the unresolved contingency regarding the Verizon Lease.

**B.    Employment of Broker and Marketing of Property.**

5.  On August 6, 2010, the Trustee filed an application to employ Shoreline West Realty ("Shoreline") as the Trustee's real estate broker and enter into an exclusive listing agreement, for the purpose of marketing and selling the Debtor's Property.  Mike Talleda, the President of Shoreline (the "Broker"), is the individual primarily responsible for marketing the Property and obtaining offers on the Property.  On October 18, 2010, the Court entered an order approving the application to employ the Broker.

6.  The Broker investigated and analyzed comparable listings and recent sales in the area. There is a "for sale" sign posted on the Property and the Property is located in a high visibility, major thoroughfare with significant traffic and exposure.  The Broker has also listed the Property on MLS and Loopnet – two reputable and well-known real property listing agencies.

**C.    Offers To Purchase The Property.**

7.  The Broker received in excess of 25 inquiries with respect to the Property.  Seven offers have been made on the Property. The offers range in price from $850,000 to $1,250,000.

The Buyer has offered $1,015,000, and there are no financing contingencies with the Buyer's offer. The Buyer has already provided the Trustee with a $101,500 deposit (10% of the proposed purchase price). The Trustee believes that the Buyer's offer is the best offer because the two other offers which may be monetarily greater than the Buyer's offer, are otherwise unattractive offers because they contain numerous contingencies, which the Trustee believes will be problematic and potentially unresolvable. The Purchase Agreement with the Buyer, and related documents governing the proposed terms of the sale of the Property to Buyer, are attached as Exhibit "__" to the Declaration of Rosendo Gonzalez (the "Gonzalez Decl."). The Purchase Agreement is the product of extensive negotiations between the Trustee and the Buyer. The Buyer made an offer to purchase the Property. The Trustee submitted a counter-offer, subject to approval of this Court, which was accepted by the Buyer. The other offers can be summarized as follows:

    a.   Offer of Kalachi Enterprises (the "Kalachi Offer"): The Kalachi Offer was made on June 10, 2010, for a purchase price of $1,050,000, and included a financing contingency for the procurement of financing of at least $650,000. The Trustee submitted a counter-offer to Kalachi. Kalachi did not accept the Trustee's counter offer.

    b.   Offer of Sam & May Khoury (the "Khoury Offer"): The Khoury Offer was made on or about September 17, 2010, for a purchase price of $850,000. The Trustee submitted a counter. The Khoury's did not accept the Trustee's counter offer.

    c.   Offer of Cam Mersola (the "Mersola Offer"): The Mersola Offer was made on September 20, 2010, for a purchase price of $1,000,000. The Trustee submitted a counter-offer to Mersola. Mersola did not accept the Trustee's counter offer.

    d.   Offer of VM Investment LLC (the "VM Offer"): The VM Offer was made on September 20, 2010, for a purchase price of $850,000. The Trustee submitted a counter-offer to VM. VM did not accept the Trustee's counter offer.

    e.   Offer of Payan Bostani (the "Bostani Offer"): The Bostani Offer was made on September 28, 2010, for a purchase price of $1,100,000, and includes an initial deposit of only $25,000, not $101,500 which is the deposit the Buyer has provided,

and also included a financing contingency in the amount of $880,000, which required that Bostani be able to obtain financing in that amount. The Bostani Offer was also contingent upon invalidating the Verizon Lease, and in the event the Verizon Lease is deemed valid, the Bostani Offer was contingent upon the modification of the Verizon Lease and building location occupied under the Verizon Lease. Various other disclosure and reporting requirements were also required of the Trustee under the Bostani Offer. The Bostani Offer will have required that the Trustee expend funds and time attempting to invalidate the purported Verizon Lease. The Trustee made a counter-offer to Bostani. Bostani responded to the Trustee's counter-offer by requiring that the sale not be subject to over-bidding, among other requirements which the Trustee could not accept.

      f.   Offer of Dr. Ramsey Amin (the "Amin Offer"):  The Amin Offer was made on October 7, 2010, for a purchase price of $1,250,000, and includes a ten percent deposit, similar to the Buyer's deposit. The Amin Offer provides Dr. Amin with forty five (45) days from the later of the opening of escrow or the receipt of all requested documents from the Trustee to obtain financing for the purchase of the Property. Additionally, the Amin Offer requires that "the Property shall be delivered with the Verizon Lease converted to a month to month tenancy or for a term not exceeding 6 months from the Closing, with additional 6 month extensions to be agreed to by both Buyer and Verizon prior to executing." The Trustee provided a counter-offer to the Amin Offer to Amin, which included the requirement that the sale be subject to overbid and removal of financing contingencies. Amin has not responded to the Trustee's counter-offer.

**D.**    **General Terms of the Proposed Sale to the Buyer.**

    8.   The general terms of the proposed sale to the Buyer are as follows:

      a.   <u>Purchase Price</u>:     The proposed purchase price is $1,015,000.

      b.   <u>Condition of Property</u>:  The Property is being sold on an **"as-is, where-is" basis**. The Trustee makes no representations or warranties, whether express or implied, of

any kind as to the condition of the Property. Potential purchasers are advised to conduct their own due diligence and investigation regarding all relevant facts in connection with any purchase.

    c.   <u>Overbid Procedures</u>:  No overbid procedures have been established by the Court. The Trustee suggests that the minimum overbid price be $1,025,000, with subsequent overbids in increments of at least $5,000. The Trustee also suggests that any qualified bidder must contact the Trustee at least twenty-four (24) hours in advance of the hearing on the Sale Motion, and submit, before the time of the hearing on the Sale Motion, a deposit for the purchase of the Property in the amount of at least $100,000. The Trustee further suggests that, in order to participate in bidding, any bidder must also provide, to the reasonable satisfaction of the Trustee, evidence of a pre-approved loan based on the buyer's written application and credit report, or have cash, and evidence of same, in an amount necessary to consummate the sale at the time of hearing. The Court has not yet approved these bidding procedures, but the Trustee will request that the Court approve these procedures at the hearing on the Sale Motion.

    d.   <u>Close of Sale</u>: Escrow shall close within thirty (30) days of a hearing date approving the sale of the Property.

    e.   <u>Other Terms of Proposed Sale</u>:    The Trustee is currently negotiating with the Buyer and tenants on the Property regarding the status of existing leases and the terms of occupancy going forward.

**E.  Claims Encumbering The Property.**

    9.  There appears to be approximately $50,730.28 in real property taxes due and owing on the Property, although the Los Angeles County Treasurer and Tax Collector has filed a proof of claim asserting that only $21,256.72 is due and owing. The greater amount which the Trustee believes is owed is based on the Preliminary Title Report attached as Exhibit "A" to the Declaration of Mike Talleda.

    10. The Property is also encumbered by a deed of trust in favor of M.S. Hubgerford and

E.M. Scala, Trustees of the Nipotini Investment Trust dated March 13, 2006 (the "Trust"). M.S. Hungerford and E.M. Scala as trustee of the Trust have filed a proof of claim and that proof of claim alleges that the amount due and owing to the Trust is $753,598. The proposed sale of the Property to the Buyer will generate enough proceeds to pay the Trust in full satisfaction of the Trust's claim. The Trust's allowed claim and any real property taxes will be paid in full at the close of escrow.

11. If an overbid generates additional funds, then the amount of unencumbered cash available to the estate will increase.

## III.

## LEGAL ARGUMENT

**A.** **The Court Should Authorize The Trustee To Sell The Property.**

1. The Trustee Has Complied With All Notice Requirements Under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules Governing the Sale of the Property.

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A).

Rule 6004(a) of the Federal Rules of Bankruptcy Procedure provides in pertinent part that notice of a proposed sale not in the ordinary course of business must be given pursuant to Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with §363(b)(2) of the Bankruptcy Code. Fed. R. Bankr. P. 6004(a). Rule 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. It also provides that the notice of sale or property is sufficient if it

1    generally describes the property. Fed. R. Bankr. P. 2002(c)(1). Rule 2002(k) requires that the

2    notice be given to the United States Trustee. Fed. R. Bankr. P. 2002(k).

3        Local Bankruptcy Rule 9013-1(d)(2) requires that a notice of motion and motion be served

4    at least 21 days before the hearing on the date specified in the notice. L.B.R. 9013-1(d)(2).

5        In addition, Local Bankruptcy Rule 6007-1(f) requires that an additional copy of the Notice

6    be submitted to the Clerk of the Bankruptcy Court together with a document Form 6004-2 at the

7    time of filing for purposes of publication. L.B.R. 6007-1(f).

8        The Trustee has complied with all of the above provisions of the Bankruptcy Code, the

9    Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules. The Trustee has

10   complied with Fed. R. Bankr. Pro. 6004(a) and 2002(a)(2), (c)(1), (i) and (k), because the Notice

11   that has been filed contemporaneously herewith, which includes the date, time and place of the

12   sale and the deadline for objecting thereto, was served on the United States Trustee, all of the

13   Debtor's known creditors, and all parties requesting special notice. The Notice and Motion were

14   also served upon the parties who have alleged liens or interests in accordance with the attached

15   preliminary title report. The Trustee has complied with the requirements of Local Bankruptcy

16   Rule 6007-1(f) because the Trustee has filed the Notice and Form 6004-2 with the Clerk of the

17   Bankruptcy Court.

18       2.    <u>The Motion Should Be Approved Because Good Business Reasons Exist to Grant</u>

19           <u>the Motion, the Purchase Price for Property is Fair and Reasonable, and the</u>

20           <u>Proposed Sale is in the Best Interests of the Creditors and the Estate.</u>

21       As a general matter, a Court considering a motion to approve a sale under §363(b) should

22   determine from the evidence presented before it that a "good business reason" exists to grant such

23   a motion. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). In addition, the Court must

24   further find it is in the best interest of the estate. To make this determination, a Court should

25   consider whether:

26       (1)    the sale is fair and reasonable, <u>i.e.</u>, the price to be paid is adequate;

27       (2)    the property has been given adequate marketing;

28

(3)     the sale is in good faith, i.e., there is an absence of any lucrative deals with

insiders, and

(4)     adequate notice has been provided to creditors.

In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); In re The

Landing, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); In re Mama's Original Foods, Inc., 234 B.R.

500, 502-505 (C.D. Cal. 1999).    The Trustee submits that the proposed sale of the Property

satisfies each of these requirements.

      *a.*        *Sound Business Purpose.*

The Ninth Circuit Bankruptcy Appellate Panel in Walter v. Sunwest Bank (In re Walter),

83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine

whether the business purpose for a proposed sale justifies disposition of property of the estate

under Section 363(b).

The facts pertaining to the sale at issue here amply substantiate the Trustee's

business decision that the contemplated sale of the Property serves the best interests of the estate's

creditors and merits the approval of this Court.    Based on the offers received by the Trustee, there

appears to be equity in the Property and that equity, if realized, will benefit creditors of the

Debtor's estate.    As a Chapter 7 Trustee, the Trustee has the duty to administer the Debtor's assets

and maximize the assets' value for the benefit of creditors.    A prompt sale of the Property will

reduce the estate's exposure to claims related to expenses associated with the Property, and any

further decline in the value of commercial property.    Thus, the Trustee believes that the proposed

sale of the Property is in the best interests of creditors and the estate.    Finally, a sale of the

Property subject to overbidding will ensure the highest possible price for the Property in the most

expedient manner.

      *b.*        *Fair and Reasonable Price.*

In order for a sale to be approved under §363(b), the purchase price must be fair and

reasonable.    See generally, In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D. Cal. 1985).    The

trustee (or debtor in possession) is given substantial discretion in this regard.    Id.    In addition,

Courts have broad discretion with respect to matters under §363(b).    See Big Shanty Land Corp.

1   v. Comer Properties, Inc., 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets,

2   the ultimate purpose is to obtain the highest price for the property sold.  Wilde Horse Enterprises,

3   Inc., 136 B.R. at 841 (citing In re Chung King, Inc., 753 F.2d 547 (7th Cir. 1985)), In re Alpha

4   Industries, Inc., 84 B.R. 703, 705 (Bankr. Mont. 1988).

5          As discussed above, the Broker has extensively marketed the Property and obtained

6   numerous offers, proposed numerous counter offers, and has accepted, subject to Court approval,

7   the most reasonable offer available under the circumstances which does not include any financing

8   contingencies.  Notwithstanding the foregoing, the Trustee will subject the sale of the Property to

9   overbidding, without any "break-up" fee requirement.  Accordingly, the Trustee believes that the

10  highest possible price will be achieved for the Property and, therefore, the final sale price should

11  be deemed to be a fair and reasonable price.

12          c.      Adequate Marketing.

13          As discussed above and the accompanying Talleda Decl., the Broker engaged in

14  substantial marketing efforts to market the Property.  Additionally, the Broker continues with its

15  marketing efforts to date, and has provided to the Trustee an extensive list of potential parties

16  which may be interested in overbidding.  The Trustee has noticed such parties of the sale of the

17  Property.  The Trustee submits that the marketing efforts are adequate and will appropriately

18  expose the Property to the market, to ensure that the estate receives as much benefit as possible

19  from the sale of the Property.

20          d.      Good Faith.

21          "Good faith" encompasses fair value, and further speaks to the integrity of the transaction.

22  In re Wilde Horse Enterprises, 136 B.R. at 842.  In this case, the sale of the Property has been

23  proposed in good faith.  The Broker has actively marketed the Property for a significant period of

24  time.  The Property has been thoroughly exposed to the marketplace and the Trustee has received

25  three written offers for the purchase of the Property.  The Buyer's offer has been negotiated at

26  arms-length and represents the highest and best offer for the Property.  The proposed sale of the

27  Property will generate the largest possible revenue with the most certainty of actually being

28

1    achieved for the estate based on the offers received by the Trustee.  Under these circumstances,

2    the sale of the Property has been proposed in good faith and for the benefit of the estate.

3                    *e.*        *Accurate and Reasonable Notice.*

4            The purpose of the notice is to provide an opportunity for objections and hearing before

5    the Court if there are objections.  In re Karpe, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988).  A notice

6    is sufficient if it includes the terms and conditions of the sale and if it states the time for filing

7    objections.  Id.

8            As set forth above, the Trustee served the Notice on the United States Trustee, all of the

9    Debtor's known creditors and all parties requesting special notice.  The Notice includes the date,

10   time and place of the sale and the time fixed for filing objections thereto.  The Notice and Motion

11   were served upon the parties who have liens against, or interests in, the Debtor's Property, and the

12   Trustee filed the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court, as required by

13   Local Bankruptcy Rule 6007-1(f), so that the Clerk of the Bankruptcy Court can publish

14   information regarding the proposed sale.  Thus, the Trustee submits that this notice should be

15   deemed adequate, accurate and reasonable by the Court.

16                                      **IV.**

17                                **CONCLUSION**

18           For the reasons discussed hereinabove, the Trustee respectfully requests that this Court

19   enter an order:

20           (1) Approving the sale of the Property, pursuant to 11 U.S.C § 363(b)(1),

21           (2) Approving the Trustee's proposed overbidding procedure and approving overbids, if

22   any; and

23   ///

24   ///

25   ///

26   ///

27   ///

28

(3)  Granting such further relief as the Court deems just and proper.

DATED: January 18, 2011

Respectfully submitted,

LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.

By: _____ /s/ Krikor J. Meshefejian _____
    EDWARD M. WOLKOWITZ
    KRIKOR J. MESHEFEJIAN
    Attorneys for Rosendo Gonzalez
    Chapter 7 Trustee

## DECLARATION OF ROSENDO GONZALEZ

I, Rosendo Gonzalez, declare:

1.      I am the Chapter 7 Trustee for the estate of Art Hovsepian.  The facts set forth herein are based upon my personal knowledge except as otherwise stated, and, if called as a witness, I could and would testify competently thereto.  I submit this declaration in support of my motion for orders approving the sale of real property of the estate and approving proposed bidding procedures (the "Sale Motion").

2.      The Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on May 5, 2010.  This case was converted to one under Chapter 7 of the Bankruptcy Code on June 8, 2010, and Rosendo Gonzalez was appointed as Chapter 7 Trustee.

3.      The Debtor is the owner of the Property.  The Property consists of two adjoining lots, located at 400 N. Glenoaks Blvd. ("Glenoaks"), and 413 E. Magnolia Blvd ("Magnolia"). Magnolia is approximately 590 square feet in size and Glenoaks is approximately 2900 square feet in size.

4.      Since my appointment I have marketed the adjoining commercial properties located at 400 North Glenoaks and 415 Magnolia, Burbank California (collectively, the "Property").  I have received seven different offers on the Property and, after negotiations with potential purchasers, I have accepted (subject to Court approval), an offer for the purchase of the Property. The Property is an asset of the bankruptcy estate.

5.      To assist me in marketing the Property and negotiate offers, I hired a real estate broker (the "Broker") to market the sale of the Property.  The Broker obtained six offers for the purchase of the Property (I had directly received an offer prior to the employment of the Broker).

6.      Dr. Hamlet Avanesian/Cathy Avanesian (the "Buyer") has made what I believe to be the highest and best offer for the Property, in the amount of $1,015,000.  The offer by the Buyer has no financing contingencies, and the Buyer has already delivered to me a $101,500 cash deposit for the purchase of the Property.  Pursuant to the proposed sale to the Buyer, secured creditors with allowed claims will be paid in full at close of escrow.  The sale of the Property will

1    be subject to overbidding, and the sale will generate enough funds to pay all secured creditors in

2    full, while leaving additional cash for the benefit of the Debtor's creditors.   I am currently

3    negotiating with the Buyer and tenants of the Property regarding the status of existing leases and

4    the terms of occupancy going forward.

5        7.      From a financial perspective, the sale of the Property can be summarized as

6    follows:

| SALE PROCEEDS | $1,015,000.00 |
|---|---|
| Payment to M.S. Hungerford and E.M. Scala, Trustees of the Nipotini Investment trust dated March 13, 2006 (the "Trust") | $753,598 (pursuant to Claim No. 6 filed by the Trust) |
| Real Property Taxes | $50,730.28 based on preliminary title report, although Los Angeles County Treasurer and Tax Collector has filed a proof of claim asserting that only $21,256.72 is due and owing |
| Real Estate Commission of 6% | $60,900 |
| Escrow Fee | $20,200 (estimated) |
| Funds for the benefit of the Debtor's estate | $129,503.72 |

14       8.      The sale of the Property will therefore pay in full the secured claim of the Trust,

15   pay in full outstanding real property taxes, and generate funds for the benefit of creditors of the

16   Debtor's estate.   If an overbid generates additional funds, then the funds available to creditors of

17   the estate will increase.

18       9.      There appear to be three parties which are currently occupying the Property, as

19   follows:

20       a.   Alek Hovsepian, the Debtor's son, who allegedly has a ten-year lease with the

21          Debtor, with allegedly two five year lease extension options, is occupying

22          approximately 1280 square feet of Glenoaks, and is apparently operating a Verizon

23          Wireless store from that location (the "Verizon Lease").

24       b.   The Debtor is currently occupying the remaining space at Glenoaks, where the

25          Debtor is running a plumbing supply store.   The Debtor has no lease agreement and

26          will vacate the premises upon a sale of the Property.

27       c.   Modern Nails is currently occupying Magnolia and currently has a month to month

28

tenancy (the "Modern Nails Lease").

10.    The Buyer has required as a condition of purchasing the Property that any tenants occupying the Property have at most a month to month lease. I am currently negotiating with Alek Hovsepian regarding the Verizon Lease and continued occupancy of the Property. I am also negotiating with the Buyer regarding this requirement. I believe that an agreement could be reached, and that, in order to prevent the loss of interest in the purchase of the Property, it is prudent to proceed with this Motion at this time, despite the unresolved contingency regarding the Verizon Lease.

11.    The general terms of the proposed sale to the Buyer are as follows:

a.    Purchase Price:    The proposed purchase price is $1,015,000.

b.    Condition of Property: The Property is being sold on an **"as-is, where-is" basis**, with no representations or warranties, whether express or implied, of any kind as to the condition of the Property. Potential purchasers have been and are advised to conduct their own due diligence and investigation regarding all relevant facts in connection with any purchase.

c.    Overbid Procedures: No overbid procedures have been established by the Court. The Sale Motion suggests that the minimum overbid price be $1,025,000, with subsequent overbids in increments of at least $5,000. The Sale Motion also suggests that any qualified bidder must contact me at least twenty-four (24) hours in advance of the hearing on the Sale Motion, and submit, before the time of the hearing on the Sale Motion, a deposit for the purchase of the Property in the amount of at least $100,000. The Sale Motion further suggests that, in order to participate in bidding, any bidder must also provide, to my reasonable satisfaction, evidence of a pre-approved loan based on the buyer's written application and credit report, or have cash, and evidence of same, in an amount necessary to consummate the sale at the time of hearing. The Court has not yet approved these bidding procedures.

        d.  <u>Close of Sale</u>: Escrow shall close within thirty (30) days of a hearing date approving the sale of the Property.

        e.  <u>Other Terms of Proposed Sale</u>:    I am currently negotiating with the Buyer and tenants of the Property regarding the status of existing leases and the terms of occupancy going forward.

12.    There appears to be approximately $50,730.28 in real property taxes due and owing on the Property, although the Los Angeles County Treasurer and Tax Collector has filed a proof of claim asserting that only $21,256.72 is due and owing. The greater amount which I believes is owed is based on the Preliminary Title Report attached as Exhibit "2" to the Declaration of Mike Talleda.

13.    The Property is also encumbered by a deed of trust in favor of M.S. Hubgerford and E.M. Scala, Trustees of the Nipotini Investment Trust dated March 13, 2006 (the "Trust"). M.S. Hungerford and E.M. Scala as trustee of the Trust have filed a proof of claim and that proof of claim alleges that the amount due and owing to the Trust is $753,598. The proposed sale of the Property to the Buyer will generate enough proceeds to pay the Trust in full satisfaction of the Trust's claim. The Trust's allowed claim and any real property taxes will be paid in full at the close of escrow.

14.    If an overbid generates additional funds, then the amount of unencumbered cash available to the estate will increase.

15.    The Buyer has offered $1,015,000, and there are no financing contingencies with the Buyer's offer. The Buyer has already provided the Trustee with a $101,500 deposit (10% of the proposed purchase price). The two other offers which may be monetarily greater than the Buyer's offer, are otherwise unattractive offers because they contain numerous contingencies, which may be problematic and potentially unresolvable. The Purchase Agreement with the Buyer, and related documents governing the proposed terms of the sale of the Property to Buyer, are attached as Exhibit "1" to the Declaration of Rosendo Gonzalez. The Purchase Agreement is the product of extensive negotiations between me and the Broker, on the one hand, and the Buyer, on the other hand. The Buyer made an offer to purchase the Property. We submitted a counter-

offer, subject to approval of this Court, which was accepted by the Buyer. The other offers can be summarized as follows:

    a. Offer of Kalachi Enterprises (the "Kalachi Offer"): The Kalachi Offer was made on June 10, 2010, for a purchase price of $1,050,000, and included a financing contingency for the procurement of financing of at least $650,000. I submitted a counter-offer to Kalachi. Kalachi did not accept my counter offer.

    b. Offer of Sam & May Khoury (the "Khoury Offer"): The Khoury Offer was made on or about September 17, 2010, for a purchase price of $850,000. I submitted a counter offer. The Khoury's did not accept my counter offer.

    c. Offer of Cam Mersola (the "Mersola Offer"): The Mersola Offer was made on September 20, 2010, for a purchase price of $1,000,000. I submitted a counter-offer to Mersola. Mersola did not accept my counter offer.

    d. Offer of VM Investment LLC (the "VM Offer"): The VM Offer was made on September 20, 2010, for a purchase price of $850,000. I submitted a counter-offer to VM. VM did not accept my counter offer.

    e. Offer of Payan Bostani (the "Bostani Offer"): The Bostani Offer was made on September 28, 2010, for a purchase price of $1,100,000, and includes an initial deposit of only $25,000, not $101,500 which is the deposit the Buyer has provided, and also included a financing contingency in the amount of $880,000, which required that Bostani be able to obtain financing in that amount. The Bostani Offer was also contingent upon invalidating the Verizon Lease, and in the event the Verizon Lease is deemed valid, the Bostani Offer was contingent upon the modification of the Verizon Lease and building location occupied under the Verizon Lease. Various other disclosure and reporting requirements were also required by Bostano under the Bostani Offer. The Bostani Offer will have required that the estate expend funds and time attempting to invalidate the purported Verizon Lease. I made a counter-offer to Bostani. Bostani responded to my counter-offer by requiring that the sale not be subject to over-bidding, among other

1    requirements which I could not accept.

2    f.    Offer of Dr. Ramsey Amin (the "Amin Offer"):  The Amin Offer was made on

3    October 7, 2010, for a purchase price of $1,250,000, and includes a ten percent

4    deposit, similar to the Buyer's deposit.  The Amin Offer provides Dr. Amin with

5    forty five (45) days from the later of the opening of escrow or the receipt of all

6    requested documents from the Trustee to obtain financing for the purchase of the

7    Property.    Additionally, the Amin Offer requires that "the Property shall be

8    delivered with the Verizon Lease converted to a month to month tenancy or for a

9    term not exceeding 6 months from the Closing, with additional 6 month extensions

10    to be agreed to by both Buyer and Verizon prior to executing."  I provided a

11    counter-offer to the Amin Offer to Amin, which included the requirement that the

12    sale be subject to overbid and removal of financing contingencies.  Amin has not

13    responded to my counter-offer.

14        I declare under penalty of perjury that the foregoing is true and correct to the best of my

15    knowledge. Executed this *14*th day of January, 2011, at Los Angeles, California.

16

17                                                        ROSENDO GONZALEZ

18

19

20

21

22

23

24

25

26

27

28                                        - 21 -

## DECLARATION OF MIKE TALLEDA

I, Mike Talleda, declare:

1.    I am a real estate agent with Shoreline West Realty (the "Broker"), real estate broker for Rosendo Gonzalez, Chapter 7 Trustee for the bankruptcy estate of Art Hovsepian (the "Debtor"), employed by the Trustee with approval of the Bankruptcy Court to market and sell the real property located at 400 North Glenoaks and 415 Magnolia, Burbank California (collectively the "Property") . I am the President of the Broker and I am the individual primarily responsible for marketing the Property and obtaining offers on the Property.

2.    I have personal knowledge of the following facts and if called upon to testify, I could and would do so competently.

3.    On August 6, 2010, the Trustee filed an application to employ the Broker as the Trustee's real estate broker and enter into an exclusive listing agreement, for the purpose of marketing and selling the real property located at 400 North Glenoaks and 415 Magnolia, Burbank California (collectively the "Property").   On October 18, 2010, the Court entered an order approving the application to employ the Broker.

4.    We have a substantial amount of experience in marketing and selling properties in Southern California.  In marketing the Property, I have investigated and analyzed comparable listings and recent sales in the area, maintained a "for sale" sign posted on the Property, and listed the Property on MLS and Loopnet – two reputable and well-known real property listing agencies. Additionally, the Property is located in a high visibility, major thoroughfare with significant traffic and exposure.

5.    I received in excess of 25 inquiries with respect to the Property.  Seven offers have been made on the Property. The offers range in price from $850,000 to $1,250,000.  The Buyer has offered $1,015,000, and there are no financing contingencies with the Buyer's offer. The Buyer has already provided the Trustee with a $101,500 deposit (10% of the proposed purchase price).  The Purchase Agreement with the Buyer, and related documents governing the proposed terms of the sale of the Property to Buyer, are attached here as Exhibit "1".

6.    The other offers can be summarized as follows:

g.  Offer of Kalachi Enterprises (the "Kalachi Offer"):  The Kalachi Offer was made on June 10, 2010, for a purchase price of $1,050,000, and included a financing contingency for the procurement of financing of at least $650,000.  The Trustee submitted a counter-offer to Kalachi.  Kalachi did not accept the Trustee's counter offer.

h.  Offer of Sam & May Khoury (the "Khoury Offer"): The Khoury Offer was made on or about September 17, 2010, for a purchase price of $850,000.  The Trustee submitted a counter offer to the Khoury's.  The Khoury's did not accept the Trustee's counter offer.

i.  Offer of Cam Mersola (the "Mersola Offer"):  The Mersola Offer was made on September 20, 2010, for a purchase price of $1,000,000.  The Trustee submitted a counter-offer to Mersola.  Mersola did not accept the Trustee's counter offer.

j.  Offer of VM Investment LLC (the "VM Offer"):  The VM Offer was made on September 20, 2010, for a purchase price of $850,000.  The Trustee submitted a counter-offer to VM.  VM did not accept the Trustee's counter offer.

k.  Offer of Payan Bostani (the "Bostani Offer"):  The Bostani Offer was made on September 28, 2010, for a purchase price of $1,100,000, and includes an initial deposit of only $25,000, not $101,500 which is the deposit the Buyer has provided, and also included a financing contingency in the amount of $880,000, which required that Bostani be able to obtain financing in that amount.  The Bostani Offer was also contingent upon invalidating the Verizon Lease, and in the event the Verizon Lease is deemed valid, the Bostani Offer was contingent upon the modification of the Verizon Lease and building location occupied under the Verizon Lease.  Various other disclosure and reporting requirements were also required of the Trustee under the Bostani Offer.  The Bostani Offer will have required that the Trustee expend funds and time attempting to invalidate the purported Verizon Lease.  The Trustee made a counter-offer to Bostani.  Bostani responded to the Trustee's counter-offer by requiring that the sale not be subject to

over-bidding, among other requirements which the Trustee did not accept.

l.    Offer of Dr. Ramsey Amin (the "Amin Offer"):  The Amin Offer was made on October 7, 2010, for a purchase price of $1,250,000, and includes a ten percent deposit, similar to the Buyer's deposit.  The Amin Offer provides Dr. Amin with forty five (45) days from the later of the opening of escrow or the receipt of all requested documents from the Trustee to obtain financing for the purchase of the Property.   Additionally, the Amin Offer requires that "the Property shall be delivered with the Verizon Lease converted to a month to month tenancy or for a term not exceeding 6 months from the Closing, with additional 6 month extensions to be agreed to by both Buyer and Verizon prior to executing."  The Trustee provided a counter-offer to the Amin Offer to Amin, which included the requirement that the sale be subject to overbid and removal of financing contingencies.  Amin has not responded to the Trustee's counter-offer.

7.    Attached as Exhibit "2" hereto is a true and complete copy of a preliminary title report I obtained in connection with my representation of the Trustee with regard to marketing the Property for sale.

8.    I have provided an extensive list of potential overbidders to counsel for the Trustee, and I understand that these potential overbidders will be served with notice of the sale of the Property.  I have also contacted these potential overbidders again and provided them with notice of the sale and notice of the hearing on the sale.  I will continue to market the Property and inform potential bidders of the sale of the Property pending the hearing on the sale of the Property.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8 th of January, 2011, at Los Angeles, California.

MIKE TALLEDA

**EXHIBIT "1"**

*918-559-6400*



### CALIFORNIA ASSOCIATION OF REALTORS®

## COUNTER OFFER No. 1
**For use by Seller or Buyer. May be used for Multiple Counter Offer.**
(C.A.R. Form CO, Revised 10/04)

Date __October 28, 2010__, at __Los Angeles__, California.
This is a counter offer to the: [ ] California Residential Purchase Agreement, [ ] Counter Offer, or [x] Other ("Offer"),
dated __10/26/10__, on property known as __500 N Glenoaks & 415 Magnolia__ ("Property"),
between __De Hamlet Avanesian Cathy Avanesian__ ("Buyer") and
__Rebecca Gonzalez-Trustee__ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. __#1 Sales price to be 1,018,000.00__
      __#2 Subject to Bankruptcy Court approval__
      __#3 Subject to overbid__
      __#4 No financing contingency__
      __#5 Escrow to close within 30 days of hearing approving sale__
      __#6 Deposit to be 10 of sales price and deposited with Escrow within 3 days from__
      __acceptance, deposit is non refundable if buyers fails to timely close escrow__
   D. The following attached supplements are incorporated into this Counter Offer: [ ] Addendum No. _1 -See Addendum_

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by [ ] _____ (date), at _____ [ ] AM [ ] PM. This Counter Offer may be executed in counterparts.

   [X] (if checked) MULTIPLE COUNTER OFFER: Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or _____, who is authorized to receive it, by 5:00PM on the third Day after this Counter Offer is made or (if checked) by [ ] _____ (date), at _____ [ ] AM [ ] PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

4. **OFFER:** [ ] BUYER OR [x] SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date _10/28/2010_
   _Rebecca Gonzalez-Trustee_
   Date _____

5. **ACCEPTANCE:** I/WE accept the above Counter Offer (if checked [ ] SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Date _11-3-10_    Time _11:06_ [X] AM [ ] PM
   Date _11-3-10_    Time _11:09_ [X] AM [ ] PM

6. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 5. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date _11-8-10_    Time _10:30_ [ ] AM [ ] PM
   _____    Time _____ [ ] AM [ ] PM

7. ( _____ / _____ ) (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____, at _____ [ ] AM [ ] PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

## COUNTER OFFER (CO PAGE 1 OF 1)

Agent: Mike Tejeda    Phone: 310.978.7746    Fax: _____    Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

11/03/2010 19:32 FAX 818 559          Magical Empire Realty                    ☑002
2010-11-03 14:58        Avanesian Family        18481048 >>    818 559 6400              P 1/3

*918-559-6400*

**CALIFORNIA ASSOCIATION OF REALTORS®**

**COUNTER OFFER No. 1**
For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date _October 28, 2010_ , at _Los Angeles_ , California.
This is a counter offer to the: ☐ California Residential Purchase Agreement, ☐ Counter Offer, or ☒ Other ("Offer"),
dated _8/23/10_ , on property known as _400 N Gleanoaks & 415 Magnolia_ ("Property")
between _DR HAMLET AVANESIAN  CATHY AVANESIAN_ ("Buyer") and
_Rosendo Gonzalez-Trustee_ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. _#1 Sales price to be 1,015,000.00_
      _#2 Subject to Bankruptcy Court approval_
      _#3 Subject to overbid_
      _#4 No financing contingency_
      _#5 Escrow to close within 30 days of hearing approving sale_
      _#6 Deposit to be 10 of sales price and deposited with Escrow within 3 days from_
      _acceptance, deposit is non refundable if buyers fails to timely close escrow_
   D. The following attached supplements are incorporated into this Counter Offer: ☒ Addendum No. _1 -See Addendum_
      ☐ _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposit, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making the Counter Offer by
   who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by ☐
   (date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☒ (If checked) **MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____ , who is authorized to receive it, by 5:00PM
   on the third Day after this Counter Offer is made or (if checked) by ☐ (date), at _____ ☐ AM ☐ PM.
   Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☐ BUYER OR ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date _10/28/2010_
   _Rosendo Gonzalez-Trustee_          Date _____

6. **ACCEPTANCE:** I/WE accept the above Counter Offer (if checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Date _11-3-10_   Time _11:04_  ☒ AM ☐ PM
   Date _11-3-10_   Time _11:03_  ☒ AM ☐ PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date _____   Time _____  ☐ AM ☐ PM
   Date _____   Time _____  ☐ AM ☐ PM

8. ( ____/____ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

Agent: Mike Tejada          Phone: 310.878.7746          Fax:                    Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

11/03/2010 19:32 FAX 818 559 6400   Shoreline Empire Realty   ☑003

2010-11-03 14:59   Avanesian Family   <<20481048>>   818 559 6400   P 3/3



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# ADDENDUM

(C.A.R. Form ADM, Revised 10/01)

No. 1

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement,
☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental
Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☑ Commercial Property
Purchase Agreement, ☑ other _Counter offer_

dated _October 28, 2010_ , on property known as _400 N Glenoaks & 415 Magnolia_
_Burbank CA._
in which _Dr Hamlet Avanesian_ , _Kathy Avanesian_ is referred to as ("Buyer/Tenant")
and _Rosendo Gonzalez-Trustee_ is referred to as ("Seller/Landlord").
#7 Property sold as is-Trustee has no knowledge of condition of the property and makes no
warranties or guarantees as to same. Buyers are advised to due their own investigation and
due diligence as to their intended use

#8. Buyers to complete all inspection within 10 days of acceptance seller will not provide
any termite inspection or corrective work.

#9 seller will not provide any disclosures as seller is a court appointed trustee an is
acting in such capacity and has no knowledge of the property- agents for the seller or
buyers at their discretion may produce disclosures for the benefit of the buyer, but in no
way are those disclosures a representation of the seller or a condition of this sale.

#10 Sellers choice of services. Section 5- A & B any and such listed expenses to be paid by
buyers

#11 Seller at close of escrow will deliver property be free of all leases other than month
to months tenants. If seller is unable or unwilling to deliver property free of
leases-seller agrees to cancel sale and returned deposit to buyer.

#12 sec 44 of original purchase contract has been extended 90 days to 11/6/2010

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _11-3-19_                                   Date _10-28-10_

Buyer/Tenant _Dr Hamlet Avanesian_             Seller/Landlord _Rosendo Gonzalez-Trustee_

Buyer/Tenant _Kathy Avanesian_                 Seller/Landlord

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

ADDENDUM (ADM-11 PAGE 1 OF 1)

Agent: Mike Talleda          Phone:310.676.7746          Fax:.          Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

CALIFORNIA
ASSOCIATION
OF REALTORS®

**COUNTER OFFER No. 1**
For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date _October 28, 2010_ , at _____ Los Angeles _____ , California.
This is a counter offer to the: ☐ California Residential Purchase Agreement, ☐ Counter Offer, or ☒ Other ("Offer"),
dated _8/23/10_ , on property known as _400 N Gleanoaks & 415 Magnolia_ ("Property"),
between _DR HAMLET AVANESIAN  Cathy AVANESIAN_ ("Buyer") and
_Rosendo Gonzalez-Trustee_ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. _#1 Sales price to be 1,015,000.00_
      _#2 Subject to Bankruptcy Court approval_
      _#3 Subject to overbid_
      _#4 No financing contingency_
      _#5 Escrow to close within 30 days of hearing approving sale_
      _#6 Deposit to be 10 of sales price and deposited with Escrow within 3 days from_
      _acceptance. deposit is non refundable if buyers fails to timely close escrow_
   D. The following attached supplements are incorporated into this Counter Offer: ☒ Addendum No. _1 -See Addendum_
      ☐ _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or
   who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by _____ ,
   (date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☒ **(If checked:) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall **not** be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____ , who is authorized to receive it, by 5:00PM
   on the third Day after this Counter Offer is made or, (if checked) by _____ (date), at _____ ☐ AM ☐ PM.
   Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☐ BUYER OR ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date _10/28/2010_
   _Rosendo Gonzalez-Trustee_
   _____ Date _____

6. **ACCEPTANCE: I/WE** accept the above Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

7. ┌──────────────────────────────────────────────────────────────────────────────────────┐
   │ **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer. │
   │ **NOTE TO SELLER:** Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.) │
   │ _____ Date _____ Time _____ ☐ AM ☐ PM │
   │ _____ Date _____ Time _____ ☐ AM ☐ PM │
   └──────────────────────────────────────────────────────────────────────────────────────┘

8. (_____/_____) **(Initials) Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 4) on (date) _____ , at _____ ☐ AM ☐ PM. A Binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

Agent: Mike Talleda   Phone: 310.676.7746   Fax: .   Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDENDUM

### (C.A.R. Form ADM, Revised 10/01)

No. *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☒ Commercial Property Purchase Agreement, ☒ other *Counter offer*

dated *October 28, 2010*, on property known as *400 N Gleanoaks & 415 Magnolia Burbank CA.*

in which *Dr Hamlet Avanesian , Kathy Avanesian* is referred to as ("Buyer/Tenant")
and *Rosendo Gonzalez-Trustee* is referred to as ("Seller/Landlord").

*#7 Property sold As iS-Trustee has no knowledge of condition of the property and makes no warranties or guarantees as to same. Buyers are advised to due their own investigation and due diligence as to their intended use*

*#8 Buyers to complete all inspection within 10 days of acceptance seller will not provide any termite inspection or corrective work.*

*#9 seller will not provide any disclosures as seller is a court appointed trustee an is acting in such capacity and has no knowledge of the property- agents for the seller or buyers at their  discretion may produce disclosures for the benefit of the buyer, but in no way are those disclosures a representation of the seller or a condition of this sale.*

*#10 Sellers choice of services, Section 5- A & B any and such listed expenses to be paid by buyers*

*#11 Seller at close of escrow will deliver Property be free of all leases other than month to months tenants. If seller is unable or unwilling to deliver property free of leases-seller agrees to cancel sale and  returned deposit to buyer.*

*#12 sec 44 of original purchase contract has been extended 30 days to 11/8/2010*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____  Date _____

Buyer/Tenant _____  Seller/Landlord _____
*Dr Hamlet Avanesian*  *Rosendo Gonzalez-Trustee*

Buyer/Tenant _____  Seller/Landlord _____
*Kathy Avanesian*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

### ADDENDUM (ADM-11 PAGE 1 OF 1)

Agent: Mike Talleda  Phone: 310.676.7746  Fax: .  Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

09/09/2010 12:44 FAX 818 559 6400   Magical Empire Realty   ☑002

FROM :HAMLET AVANESIAN DDS                    FAX NO. :8185487697                    Sep. 09 2010 09:27AM P1



CALIFORNIA
ASSOCIATION
OF REALTORS®

**COMMERCIAL PROPERTY PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 4/10)

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ Date: _August 23, 2010_
      ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, or ☐ Other _Dr Hamlet Avanesian, Cathy Avanesian_ ("Buyer"),
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _400 North Glenoaks Blvd_
      _Burbank, CA 91501_ , Assessor's Parcel No. _2455-036-01762455-036-016_ , situated in
      _Burbank_ , County of _Los Angeles_ , California, ("Property"),
   C. **THE PURCHASE PRICE** offered is _One Million_ _____ Dollars $ _1,000,000.00_ ).
   D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ _60_ Days After Acceptance).
2. **AGENCY:**
   A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-representative agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _ShorelineWest Realty_ (Print Firm Name) is the agent
      of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _Magical Empire Realty_ (Print Firm Name) (if not same
      as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
      Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of ........................................................$ _30,000.00_
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer,
          ☐ Other _____ within 3 business days after acceptance
          (or ☐ Other _____ )
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check (or ☐ _____ );
          the agent submitting the offer (or to ☐ _____ ) to
          _____ . The deposit shall be held uncashed until Acceptance and
          _Escrow_ _____ ), made payable to
          then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3 business days after
          Acceptance (or ☐ Other _____ )
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of .......$ _____
      within _____ Days After Acceptance, or ☐ _____ .
   C. **LOAN(S):**
      (1) **FIRST LOAN** in the amount of ........................................................$ _500,000.00_
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed
          (C.A.A. Form PAA), ☐ subject to financing, ☐ Other _____ . This
          loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial
          rate not to exceed _____ % of the loan amount.
          exceed _____ % of the loan amount. Regardless of the type of loan, Buyer shall pay points not to
      (2) ☐ **SECOND LOAN** in the amount of ........................................................$ _____
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed
          (C.A.A. Form PAA), ☐ subject to financing, ☐ Other _____ . This
          loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial
          rate not to exceed _____ % of the loan amount.
          exceed _____ % of the loan amount. Regardless of the type of loan, Buyer shall pay points not to
   D. **ADDITIONAL FINANCING TERMS:** _____
      _____
   E. **BALANCE OF PURCHASE PRICE OR DOWN PAYMENT** in the amount of ........................................................$ _470,000.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** ........................................................$ _1,000,000.00_
   G. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H1) shall,
      within 7 (or ☐ _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing
      costs, (if checked, ☒ verification attached.)
   H. **LOAN TERMS:**
      (1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender
          or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved
          for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)

Buyer's Initials ( _HME_ )( _CO_ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2010,
CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller's Initials ( _____ )( _____ )

**CPA REVISED 4/10 (PAGE 1 OF 10)**

Reviewed by _____ Date _____    EQUAL HOUSING OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 10)**

Agent: Suran Shadekamyan    Phone: 818-559-2400
Broker: Suren Shadekamyan 2714 N. Parish Place    Burbank, CA 91504    Fax: 818-559-6400    Prepared using zipForm® software

09/09/2010 12:45 FAX 818 559 ____  Medical Empire Realty                    ☑003
FROM :HAMLET AVANESIAN DDS              FAX NO. :8185487697              Sep. 09 2010 09:27AM P2

Property Address: **400 North Glenoaks Blvd**
**Burbank**

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s).     Date: __August 23, 2010__
specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain
and provide deposit, balance of down payment and closing costs are not contingencies of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
   (i) Within 17 (or ☐ _____ ) Days After Acceptance, Buyer shall, as specified in Paragraph 17, in writing remove the loan
contingency or cancel this Agreement;
OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
(4) ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If
Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or
other legal remedies.
I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal
of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency,
Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as
specified in paragraph 17B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____
Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 17B(3), in writing remove the
appraisal contingency or cancel this Agreement within 17 (or _____ )
J. ☐ **ALL CASH OFFER** (if checked): Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance,
verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)                        ) Days After Acceptance, Deliver to Seller written
K. **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not
limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate
financing, (i) Buyer has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the
financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the
obligation to purchase the Property and close escrow as specified in this Agreement.
4. **ALLOCATION OF COSTS** (if checked ): Unless otherwise specified in writing, this paragraph only determines who is to pay for the
inspection, test or service ("Report") mentioned; it does not determine in the report who is to pay for any work recommended or
identified in the Report.
   A. **INSPECTIONS AND REPORTS:**
      (1) ☐Buyer ☐ Seller shall pay for sewer connection, if required by Law prior to Close Of Escrow.
      (2) ☐Buyer ☐ Seller shall pay to have septic or private sewage disposal system inspected _____
      (3) ☐Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
      (4) ☐Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by __Company of Seller's choice__
      (5) ☐Buyer ☐ Seller shall pay for the following inspection or report __N/A__
      (6) ☐ Buyer ☐ Seller shall pay for the following inspection or report __N/A__
   B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
      (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of
Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
      (2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards,
inspections and reports if required as a condition of closing escrow under any Law.
      (3) ☐ Buyer ☒ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which
shall be installed prior to Close Of Escrow. Prior to Close Of Escrow Seller shall provide Buyer a written statement of
compliance, if required by Law.
   C. **ESCROW AND TITLE:**
      (1) ☒ Buyer ☒ Seller shall pay escrow fee __50/50__
Escrow Holder shall be _____
      (2) ☐ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 18E    __Company of Seller's choice__
Owner's title policy to be issued by __Company of Seller's choice__
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)
   D. **OTHER COSTS:**
      (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
      (2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____
      (3) ☐ Buyer ☐ Seller shall pay Owners' Association (OA) transfer fee _____
      (4) ☐ Buyer ☐ Seller shall pay OA document preparation fees _____
      (5) ☐ Buyer ☐ Seller shall pay for _____
      (6) ☐ Buyer ☐ Seller shall pay for _____
5. **CLOSING AND POSSESSION:**
   A. **Seller-Occupied or Vacant Units:** Possession shall be delivered to Buyer at 5pm or ☐ __5:00__ ☐ AM ☒ PM, ☒on the date of
Close Of Escrow; ☐ on _____ ; or ☐ no later than _____
Days After Close Of Escrow. If transfer
of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement
(C.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.
   B. **Tenant Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to
Buyer on Close Of Escrow.
   C. At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale and (ii) seller shall
deliver to buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.
   D. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes,
security systems, alarms and garage door openers. If the Property is a unit in a condominium or located in a common-interest
subdivision Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

Buyer's Initials ( ____ )( ____ )
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 4/10 (PAGE 2 OF 10)

Seller's Initials ( ____ )( ____ )

| Reviewed by | | Date | |

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 2 OF 10)**

Hamlet and Cathy

09/09/2010 12:45 FAX 818 559 6  Magical Empire Realty                   @004
FROM :HAMLET AVANESIAN DDS        FAX NO. :8195487697        Sep. 09 2010 09:28AM P3

**400 North Glenoaks Blvd**
Property Address: Burbank.                                    Date: August 23, 2010

**6. SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

**7. SELLER DISCLOSURES:**

**A. NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 17, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

**B. ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 17, Seller shall Deliver to Buyer, in writing, the following disclosures, documentation and information:

(1) **RENTAL SERVICE AGREEMENTS:** (i) All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in those documents.

(2) **INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

(3) ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

(4) **SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

(5) **PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

(6) **STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

(7) **GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

(8) **VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

(9) **MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: (i) any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; (ii) any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy.

**C. WITHHOLDING TAXES:** Within the time specified in paragraph 17A, to avoid required withholding Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law, (C.A.R. Form AS or QS).

**8.** ☒ **ENVIRONMENTAL SURVEY** (If checked): Within ___10___ Days After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☒ Seller. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement.

**9. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly Deliver a subsequent or amended disclosure or notice in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

**10. CHANGES DURING ESCROW:**

A. Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 17: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify, or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.

B. At least 7 (or ☐ _____ ) Days prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of any Proposed Changes.

**11. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

A. **SELLER HAS:** 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or located in a planned unit development or other common interest subdivision.

B. If Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the OA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the OA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of OA minutes for regular and special meetings; and (v) the names and contact information of all OA's governing the Property. (Collectively, "CI Disclosures.") Seller shall itemize and deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 17.

Buyer's Initials (____)(____)          Seller's Initials (____)(____)

Copyright © 199?-20?0, CALIFORNIA ASSOCIATION OF REALTORS®, INC.          Reviewed by _____ Date _____
CPA REVISED 4/10 (PAGE 3 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 10)**          Hamlet and Cathy

09/09/2010 12:48 FAX 818 559 6700    Magnet Empire Realty    ☑005

FROM :HAMLET AVANESIAN DDS          FAX NO. :8185487697          Sep. 09 2010 09:29AM  P4

*400 North Glenoaks Blvd*
Property Address: Burbank                                                      Date: *August 23, 2010*

**12. ITEMS INCLUDED AND EXCLUDED:**
A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 12B or C.
B. **ITEMS INCLUDED IN SALE:**
   (1) All EXISTING fixtures and fittings that are attached to the Property.
   (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms.
   (3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 17.
   (4) Seller represents that all items included in the purchase price are, unless otherwise specified, owned by Seller. Within the time specified in paragraph 17, Seller shall give Buyer a list of fixtures not owned by Seller.
   (5) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
   (6) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.
C. **ITEMS EXCLUDED FROM SALE:**

**13. CONDITION OF PROPERTY:** Unless otherwise agreed: (i) Property is sold (a) in its Present physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's investigation rights; (ii) The Property including pool, spa, landscaping and grounds, is to be maintained in substantial, the same condition as of the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.
A. Seller warrants that the Property is legally approved as _____ units.
B. Seller shall, within the time specified in paragraph 17, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE ANY AND ALL OTHER DISCLOSURES REQUIRED BY LAW.
C. Buyer has the right to inspect the Property and, as specified in paragraph 17, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that seller make Repairs or take other action.
**14. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 17B. Within the time specified in paragraph 17B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 17B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
C. Buyer shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
D. Buyer indemnity and Seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.
**15. SELLER DISCLOSURES: ADDENDA; ADVISORIES; OTHER TERMS:**
A. Seller Disclosures (if checked): Seller shall, within the time specified in paragraph 17A, complete and provide Buyer with a:
   ☑ Seller Property Questionnaire (C.A.R. Form SPQ) OR    ☐ Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD)
B. Addenda (if checked):    ☐ Addendum # _____ (C.A.R. Form ADM)
   ☑ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA)
   ☐ Purchase Agreement Addendum (C.A.R. Form PAA)    ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
   ☐ Short Sale Addendum (C.A.R. Form SSA)    ☐ Other _____
   ☐ Buyer Intent to Exchange Supplement (C.A.R. Form BES)    ☐ Seller Intent to Exchange Supplement (C.A.R. Form SES)
C. Advisories (if checked):    ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
   ☐ Probate Advisory (C.A.R. Form PAK)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
   ☐ Trust Advisory (C.A.R. Form TA)    ☐ REO Advisory (C.A.R. Form REO)
D. Other Terms: *Any and all current tenants' lease agreements, security deposits, and/or documents regarding their tenancy relationship with the seller.*

Buyer's Initials ( HA )( CA )                                    Seller's Initials ( _____ )( _____ )
Copyright © 1991-2010 CALIFORNIA ASSOCIATION OF REALTORS®, INC.    Reviewed by _____ Date _____
CPA REVISED 4/10 (PAGE 4 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 10)**    Hamlet and Cathy

09/09/2010 12:47 FAX 818 559 8█  Magical Empire Realty                 ☑006

FROM :HAMLET AVANESIAN DDS          FAX NO. :8185487697          Sep. 09 2010 09:30AM  P5

*400 North Glenoaks Blvd*
Property Address: *Burbank,*                                                    Date: *August 23, 2010*
16. TITLE AND VESTING:

A. Within the time specified in paragraph 17, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 17B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 17, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

17. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 7A, B and C, 11A, 12B(3) and (4), 13B, 15A and B and 16. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

B. BUYER HAS: 17 (or ☐ _____ ) Days After Acceptance, unless otherwise agreed in writing, to:
(1) (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all other matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 7 and insurability of Buyer and the Property).
(2) Within the time specified in 17B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
(3) Within the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 17A, then Buyer has 5 (or ☐ _____ ) Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
(4) Continuation of Contingency: Even after the end of the time specified in 17B(1) and before Seller cancels this Agreement, if at all, pursuant to 17C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 17C(1).

C. SELLER RIGHT TO CANCEL:
(1) Seller right to Cancel; Buyer Contingencies: If, within the time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.
(2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 3H; (iv) if Buyer fails to provide verification as required by 3G or 3J; or (v) if Seller reasonably disapproves of the verification provided by 3G or 3J. In such event, Seller shall authorize return of Buyer's deposit.
(3) Notice To Buyer To Perform: The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 17C(2).

D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections, or for inability to obtain financing.

E. CLOSE OF ESCROW: Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first Deliver to the other a demand to close escrow (C.A.R. Form DCE).

F. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( ___ )( ___ )
Copyright © 1991-20?? CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 4/10 (PAGE 5 OF 10)

Seller's Initials ( ___ )( ___ )
Reviewed by _____ Date _____

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 10)                Hamlet and Cathy

09/09/2010 12:47 FAX 818 559 6‎___  Magical Empire Realty   ☑007

FROM :HAMLET AVANESIAN DDS         FAX NO. :8185487697         Sep. 09 2010 09:31AM  P6

*400 North Glencaks Blvd*
Property Address: *Burbank,*                                           Date: *August 23, 2010*

18. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

19. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

20. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

21. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or ____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 13; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R.form VP).

22. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

25. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

26. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 34A.

27. **DEFINITIONS:** As used in this Agreement:
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    C. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded.
    D. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    E. "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    F. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    G. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    H. "Deliver", "Delivered" or "Delivery", regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 10;
    OR (ii) if checked, ☐ per the attached addendum (C.A.R. Form RDN).

Buyer's Initials:( *VA* )( *CA* )                                    Seller's Initials ( _____ )( _____ )
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.     | Reviewed by _____ Date _____ |
CPA REVISED 4/10 (PAGE 6 OF 10)                                      

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 6 OF 10)**                    Hamlet and Cathy

09/09/2010 12:48 FAX 818 559 8480    Magical Empire Realty    ☑ 008

FROM :HAMLET AVANESIAN DDS    FAX NO. :8185487697    Sep. 09 2010 09:32AM P7

Property Address: Burbank, 400 North Glenoaks Blvd    Date: August 23, 2010

I.  "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.

J.  "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

K.  "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

L.  "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

28. ASSIGNMENT: Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.

29. SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

30. COPIES: Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

31. BROKERS:

A. BROKER COMPENSATION: Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

B. BROKERAGE: Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultation and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.

C. SCOPE OF BROKER DUTY: Buyer and Seller acknowledge and agree that: Brokers: (i) do not decide what price Buyer should pay or Seller should accept; (ii) do not guarantee the condition of the Property (iii) do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) shall not be responsible for identifying defects that are not known to Brokers(s); (v) shall not be responsible for inspecting public records or permits concerning the title or use of the Property; (vi) shall not be responsible for identifying location of boundary lines or other items affecting title; (vii) shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS or PDS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; (viii) shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and (ix) shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

32. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any relating counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6, 7C, 15B and D, 16, 17F, 22, 27, 31A, 32, 37, 40 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 31A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐                    ). Escrow holder shall provide Seller's Statement of Information to Title company when received from Seller. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

C. Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraph 31A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 31A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyer's Initials ( ____ )( ____ )

Seller's Initials ( ____ )( ____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 4/10 (PAGE 7 OF 10)

Reviewed by _____ Date _____

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 10)    Hamlet and Cathy

09/09/2010 12:49 FAX 818 559 8...  Audubon Empire Realty        ☒009
FROM :HAMLET AVANESIAN DDS      FAX NO. :8185487697      Sep. 09 2010 09:33AM  P8

*400 North Glenoaks Blvd*

Property Address: Burbank,                                   Date: August 23, 2010

**33. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.

Buyer's Initials ____ / ____     Seller's Initials ____ / ____

**34. DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 34C.

B. **ARBITRATION OF DISPUTES:**
Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 34C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ____ / ____     Seller's Initials ____ / ____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.
(2) **BROKERS:** Brokers shall not be obligated or compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**35. GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.

**36. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initiated by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials ( ____ )( ____ )          Seller's Initials ( ____ )( ____ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 4/10 (PAGE 8 OF 10)

Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 10)**          Hamlet and Cathy

09/09/2010 12:50 FAX 818 559 6       Magical Empire Realty                         ☑010

FROM :HAMLET AVANESIAN DDS              FAX NO. :8185487697         Sep. 09 2010 09:34AM P9

**400 North Glenoaks Blvd**
Property Address: **Burbank,**                                    Date: **August 23, 2010**

37. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

38. **AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, By Laws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

39. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by **Suren Shadekamyan** who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (OR, if checked ☐ by _____ (date), at _____ ☐ AM ☐ PM),

Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.
Buyer **Dr Hamlet Avanesian**
By _____                      Date **9-7-10**
Print name _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Buyer **Cathy Avanesian**
By _____                      Date **9-7-10**
Print name _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA).

40. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____

Seller _____
By _____                      Date _____
Print name _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____
By _____                      Date _____
Print name _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____/____ ) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's
     (initials)     authorized agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement
                    is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent
                    whether or not confirmed in this document. Completion of this confirmation is not legally required in order
                    to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance
                    has occurred.

Buyer's Initials ( _____ )( _____ )                        Seller's Initials ( _____ )( _____ )         
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 4/10 (PAGE 9 OF 10)                          | Reviewed by _____ Date _____ |

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 10)**                    Hamlet and Cathy

09/09/2010 12:50 FAX 818 559 6    Magical Empire Realty    ☑011

FROM :HAMLET AVANESIAN DDS        FAX NO. :8185487697        Sep. 09 2010 09:35AM P10

400 North Glenoaks Blvd

Property Address: _Burbank,_                                         Date: _August 23, 2010_

**REAL ESTATE BROKERS:**
A.  Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B.  Agency relationships are confirmed as stated in paragraph 2 above.
C.  If specified in paragraph 3A(2), Agent who submitted offer for Buyer acknowledges receipt of deposit.
D.  **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating
    Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS or PDS, provided
    Cooperating Broker is a Participant of the MLS or PDS in which the property is offered for sale or a reciprocal MLS or PDS; or
    (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating
    Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an
    exemption exists?

Real Estate Broker (Selling Firm) _Magical Empire Realty_ _____ DRE Lic. # _01278370_
By _____ DRE Lic. # _01278370_ ___ Date _____
Address _2214 N Parish Place_ _____ City _Burbank_ ___ State _CA_ ___ Zip _91504_
Telephone _(818) 559-2400_ ____ Fax _(818) 559-6400_ ___ E-mail _sshadekavan@yahoo.com_
Real Estate Broker (Listing Firm) _ShorelineWest Realty_ _____ DRE Lic. # _____
By _____ DRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____ ),
counter offer(s) numbered _____ and ☐ Other _____
_____ , and agrees to act as Escrow Holder subject to paragraph 32 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions, if any.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
                                Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on
                          Seller's Initials                                    (date).

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CPA REVISED 4/10 (PAGE 10 OF 10)    Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 10)**    Hamlet and Cathy

FROM : HAMLET AVANESIAN DDS          FAX NO. : 8185487697          Oct. 12 2010 05:31PM P1

1818-559-2400
818  568-5081

# CALIFORNIA ASSOCIATION OF REALTORS®

## COUNTER OFFER No. TWO
For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date _October 12, 2010_ , at _BURBANK_ , California.

This is a counter offer to the: ☐ California Residential Purchase Agreement, ☒ Counter Offer, or ☐ Other ("Offer"),

dated _October 5, 2010_ , on property known as _400 North Glenoaks Blvd_ ("Property"),

between _Dr Hamlet Avanesian, Cathy Avanesian_ ("Buyer") and

_ROSENDO GONZALEZ-TRUSTEE_ ("Seller").

1. **TERMS:** The terms and conditions of the above-referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. _#1. Purchase price to be $1,015,000.00_
      _#2. Buyer will take property with only one tenant, Verizon._
      _#3. Buyer agrees to have Verizon as tenant. However, Verizon must relocate to the_
      _rear unit and be subject to a new lease and/or month to month tenancy._
      _#4. Buyer agrees to all other terms of Seller's counter offer #1._

   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. _____
      ☐ _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by _____ (date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☐ (If checked:) **MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____ , who is authorized to receive it, by 5:00PM on the third Day after this Counter Offer is made or, (if checked) by _____ (date), at _____ ☐ AM ☐ PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☐ BUYER ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date _10-12-1_
   Date _10-12-10_

6. **ACCEPTANCE:** I/WE accept the above Counter Offer (if checked ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER**) and acknowledge receipt of a Copy.
   Date _____ Time _____ ☐ AM ☐ PM
   Date _____ Time _____ ☐ AM ☐ PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date _____ Time _____ ☐ AM ☐ PM
   Date _____ Time _____ ☐ AM ☐ PM

8. ( ____ / ____ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

## COUNTER OFFER (CO PAGE 1 OF 1)

Agent: Suren Shadekamyan          Phone: 818-559-2400          Fax: 818-559-8400          Prepared using zipForm® software
Broker: Suren Shadekamyan 2714 N. Parish Place          Burbank, CA 91504

10/12/2010 21:11 FAX 818 559 6___    Magical Empire Realty    ☑003

FROM :HAMLET AVANESIAN DDS    FAX NO. :8185487697    Oct. 12 2010 06:32PM P2

#2

## CALIFORNIA ASSOCIATION OF REALTORS®

## COUNTER OFFER No. 1
For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Los Angeles _____ , California ("Offer").

Date 10-4-10 , at _____

This is a counter offer to the ☐ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other _____ ("Offer"),
on property known as 800 N Gaennuela & 415 Magnolia ("Property")
dated 8-23-10 , between Rosendo Gonzales, Cathy Avanesian ("Buyer") and
Dr HAMLET AVANESIAN, CATHY AVANESIAN - Trustee ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. #1 Sales price to be $1,100,000.00
      #2 Subject to Bankruptcy Court approval
      #3 Subject to overbid
      #4 No financing contingency
      #5 Escrow to close within 30 days of hearing approving sale
      #6 Deposit to be 10% of sales price and deposited with Escrow within 5 days from acceptance. deposit is non refundable if buyers fails to timely close escrow
   D. The following attached supplements are incorporated into this Counter Offer: ☒ Addendum No. 1

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or
who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by ☐
(date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☒ (If checked:) MULTIPLE COUNTER OFFER: Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of the Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by
_____ , who is authorized to receive it, by 5:00PM
on the third Day after this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ ☐ AM ☐ PM.
Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☐ BUYER OR ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.    Date 10/04/2010

Rosendo Gonzales-Trustee _____ Date _____

6. **ACCEPTANCE:** I/WE accept the above Counter Offer (if checked ☒ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   _____ Date 10-12-10 Time _____ ☐ AM ☐ PM
   _____ Date 10-12-10 Time _____ ☐ AM ☐ PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   (NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6.) (Paragraph 7 applies only if paragraph 4 is checked.)
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

8. ( ____ / ____ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer (or that person's authorized agent or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

## COUNTER OFFER (CO PAGE 1 OF 1)

Prepared using zipForm® software

Agent: Mike Talleda    Phone: 310.870.7748    Fax: _____
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

10/12/2010 21:11 FAX 818 559 6420   Magical Empire Realty   ☐ 004

FROM :HAMLET AVANESIAN DDS          FAX NO. :8185487697          Oct. 12 2010 06:33PM P3

**CALIFORNIA ASSOCIATION OF REALTORS®**

**ADDENDUM**

**(C.A.R. Form ADM, Revised 10/01)**

No. 1

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement,
☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental
Agreement. ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property
Purchase Agreement, ☒ other _Counter Offer_

dated _October 4, 2010_ , on property known as _400 N Glenoaks & 415 Magnolia_
_Burbank CA._ , _Cathy Avanesian_ is referred to as ("Buyer/Tenant")
in which _Dr Hamlet Avanesian,_ is referred to as ("Seller/Landlord").
and _Rosendo Gonzalez-Trustee_

_#7 Property Sold as is- Trustee has no knowledge of condition of the property and makes no_
_warranties or guarantees as to same. Buyers are advise to due their own_
_investigations and due diligence as to their intended use._

_#8 Buyers to complete all inspections within 10 days from acceptance_

_#9 Seller will not provide any disclosure as sellers is a court appointed trustee an is_
_acting in such capacity and has no knowledge of the condition or potential use of the_
_property._

_#10 Buyer to accept property with current leases and tenants._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____          Date _10-5-10_

Buyer/Tenant _____          Seller/Landlord _____ _Rosendo Gonzalez-Trustee_
_Dr Hamlet Avanesian,_

Buyer/Tenant _____          Seller/Landlord _____
_Cathy Avanesian_

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright © 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____ Date _____

ADM-11 REVISED 10/01 (PAGE 1 OF 1)          **ADDENDUM (ADM-11 PAGE 1 OF 1)**          Prepared using zipForm® software

Phone: 310.878.7746    Fax:
Agent: Mike Toledo
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

**CALIFORNIA ASSOCIATION OF REALTORS®**

## COUNTER OFFER No. 1

**For use by Seller or Buyer. May be used for Multiple Counter Offer.**
(C.A.R. Form CO, Revised 10/04)

Date _10-4-10_, at _Los Angeles_, California.

This is a counter offer to the: ☐ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other ("Offer"),
dated _8-23-10_, on property known as _400 N Gleanoaks & 415 Magnolia_ ("Property"),
between _Dr HAMLET AVANESIAN, CATHY AVANESIAN_ ("Buyer") and
_Rosendo Gonzalez-Trustee_ ("Seller").

1.   **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A.   Paragraphs in the Offer that require initials by all parties, are but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B.   Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C.   _#1 Sales price to be $1,100,000.00_
        _#2 Subject to Bankruptcy Court approval_
        _#3 Subject to overbid_
        _#4 No financing contingency_
        _#5 Escrow to close within 30 days of hearing approving sale_
        _#6 Deposit to be 10% of sales price and deposited with Escrow within 3 days from_
        _acceptance. deposit is non refundable if buyers fails to timely close escrow_
   D.   The following attached supplements are incorporated into this Counter Offer: ☒ Addendum No. _1_

2.   **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3.   **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or
who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by ☐ _____
(date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4.   ☒ (If checked) **MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____, who is authorized to receive it, by 5:00PM
on the third Day after this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ ☐ AM ☐ PM.
Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5.   **OFFER:** ☐ BUYER OR ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date _10/04/2010_
   _Rosendo Gonzalez-Trustee_
   _____ Date _____

6.   **ACCEPTANCE: I/WE** accept the above Counter Offer (If checked ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER**) and acknowledge receipt of a Copy.
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

7.   **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   **NOTE TO SELLER:** Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

8.   (_____/_____) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____, at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

## COUNTER OFFER (CO PAGE 1 OF 1)

Agent: Mike Talleda    Phone: 310.676.7746    Fax: .    Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250



CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDENDUM

### (C.A.R. Form ADM, Revised 10/01)

No. *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement,
☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental
Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property
Purchase Agreement, ☒ other *Counter Offer*

dated _____ *October 4, 2010* _____ , on property known as *400 N Gleanoaks & 415 Magnolia*
*Burbank CA.*
in which _____ *Dr Hamlet Avanesian,          , Cathy Avanesian* _____ is referred to as ("Buyer/Tenant")
and _____ *Rosendo Gonzalez-Trustee* _____ is referred to as ("Seller/Landlord").

*#7 Property sold as is- Trustee has no knowledge of condition of the property and makes no*
*warranties or guarantees as to same.  Buyers are advice to due their own*
*investigations and due diligence as to their intended use.*

*#8 Buyers to complete all inspections within 10 days from acceptance*

*#9 seller will not provide any disclosure as sellers is a court appointed trustee an is*
*acting in such capacity and has no knowledge of the condition or potential use of the*
*property.*

*#10 Buyer to accept property with current leases and tenants.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____     Date _____

Buyer/Tenant _____     Seller/Landlord _____
    *Dr Hamlet Avanesian,*                                   *Rosendo Gonzalez-Trustee*
Buyer/Tenant _____     Seller/Landlord _____
    *Cathy Avanesian*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

Reviewed by _____
Broker or Designee _____ Date _____

EQUAL HOUSING
OPPORTUNITY

### ADDENDUM (ADM-11 PAGE 1 OF 1)

Agent:  Mike Talleda                          Phone: 310.676.7746          Fax:.                          Prepared using zipForm® software
Broker: shoreline west realty 14147 Hawthorne Blvd Hawthorne, CA 90250

11/17/2010 16:14 FAX 818 559 6400        Magical Empire Realty        ☑001



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**CONTINGENCY REMOVAL No. _one_**

(C.A.R. Form Revised CR, 04/10)

In accordance with the terms and conditions of the: ☐ California Residential Purchase Agreement (C.A.R. Form RPA-CA), or ☑ Residential Income Property Purchase Agreement (C.A.R. Form RIPA), or ☑ Commercial Property Purchase Agreement (C.A.R. Form CPA), or ☐ Vacant Land Purchase Agreement (C.A.R. Form VLPA) or ☐ Other _____
("Agreement"), dated _____August 23, 2010_____, on property known as
_____400 North Glenoaks & 415 Magnolia, Burbank_____ ("Property"),
between _____Dr Hamlet Avanesian, Cathy Avanesian_____ ("Buyer")
and _____ROSENDO GONZALEZ-TRUSTEE_____ ("Seller").

A.  **BUYER REMOVAL OF BUYER CONTINGENCIES:** Buyer removes those contingencies specified below. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller (such as C.A.R Form RR), as applicable, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility, and expense, if any, for Repairs, corrections, or for the inability to obtain financing.

1.  ONLY the following individually checked Buyer contingencies are removed:

    A.  ☐ Loan (Paragraph 3H) (NOTE: Removing the loan contingency also removes the appraisal contingency unless the appraisal contingency is separately selected in the Agreement.)
    B.  ☐ Appraisal (Paragraph 3I)
    C.  ☐ Reports/Disclosures (Paragraphs 4 and 6)
    D.  ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 7B)
    E.  ☐ Buyer's Investigation, including insurability (Paragraph 10)
    F.  ☐ Title: Preliminary Report (Paragraph 12)
    G.  ☐ Sale of Buyer's Property (Paragraph 13)
    H.  ☐ _____
    I.  ☐ _____
    J.  ☐ _____

OR  2.  ☐ ALL Buyer contingencies are removed, EXCEPT: ☐ Loan Contingency (Paragraph 3H); ☐ Appraisal Contingency (Paragraph 3I); (NOTE: Unless separately selected in the Agreement, the appraisal contingency is removed when the loan contingency is removed); ☐ Contingency for the Sale of Buyer's Property (C.A.R. Form COP) (Paragraph 13); ☐ Condominium/ Planned Development (HOA) Disclosures (Paragraph 7B);
    ☐ Other _____

3.  ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

NOTE: Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

_____    Date _____11-17-10_____
Buyer _Dr Hamlet Avanesian_

_____    Date _____11-17-10_____
Buyer _Cathy Avanesian_

B.  **SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: ☐ Contingency for Seller's purchase of replacement property (C.A.R. Form COP); ☐ Other _____

_____    Date _____
Seller _ROSENDO GONZALEZ-TRUSTEE_

_____    Date _____
Seller

_____ (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by ☑ Buyer ☑ Seller or authorized agent on __11/17/10__ (date), at _4_ ☐ AM/ ☒ PM.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2003-2010, CALIFORNIA ASSOCIATION OF REALTORS®, Inc. All Rights Reserved.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CR REVISED 04/10 (PAGE 1 OF 1)        **CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

| Agent: Suren Shadekamyan | Phone: 818-559-2400 | Fax: 818-559-6400 | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Suren Shadekamyan 2714 N. Parish Place | | Burbank, CA 91504 | |

6022

🔒 Security features are included. Details on back.

**TOWN CENTER DENTISTRY**
HAMLET S. AVANESIAN, D.D.S., F.A.G.D.
316 E Broadway Suite A
Glendale, CA 91205
818-548-7700

CITIBANK (WEST), N.A.
414 NORTH CENTRAL AVE.
GLENDALE, CA 91203
BR. 730
90-7172/3222

11/17/2010

PAY TO THE
ORDER OF    Godfrey Escrow                                                    $**101,500.00

One Hundred One Thousand Five Hundred and 00/100***************************************    DOLLARS

Godfrey Escrow

In Beautiful Smiles We Trust

FOR    Escrow 400 N. Glenoaks, burbank, 91502                                    MP

⑈006022⑈ ⑆322271724⑆ 201432630⑈

**EXHIBIT "2"**

# EQUITY TITLE COMPANY

425 W. BROADWAY SUITE 300
GLENDALE, CA 91204
PHONE: (800) 373-7500
FAX: (818) 548-1778

DATED AS OF MAY 5, 2010 AT 7:30 A.M.

**BEACHWOOD ESCROW**          **YOUR NO.: 005187-SL**
**1509 W. MAGNOLIA BLVD.,**   **PROPERTY ADDRESS: 413 EAST MAGNOLIA**
**BURBANK, CA 90505**         **BOULEVARD AND 400 NORTH GLENOAKS**
                             **BOULEVARD, BURBANK, CA**

**ATTENTION: SALLY LUCERO**   **ORDER NO.: LA1060768**
                             **TITLE OFFICER: ANNE M WANG**

---

## "UPDATED PRELIMINARY REPORT"

IN RESPONSE TO THE ABOVE REFERENCED APPLICATION FOR A POLICY OF TITLE INSURANCE, **EQUITY TITLE COMPANY** HEREBY REPORTS THAT IT IS PREPARED TO ISSUE, OR CAUSE TO BE ISSUED, AS OF THE DATE HEREOF, A POLICY OR POLICIES OF TITLE INSURANCE DESCRIBING THE LAND AND THE ESTATE OR INTEREST THEREIN HEREINAFTER SET FORTH, INSURING AGAINST LOSS WHICH MAY BE SUSTAINED BY REASON OF ANY DEFECT, LIEN OR ENCUMBRANCE NOT SHOWN OR REFERRED TO AS AN EXCEPTION BELOW OR NOT EXCLUDED FROM COVERAGE PURSUANT TO THE PRINTED SCHEDULES, CONDITIONS AND STIPULATIONS OF SAID POLICY FORMS.

THE PRINTED EXCEPTIONS AND EXCLUSIONS FROM THE COVERAGE OF SAID POLICY OR POLICIES ARE SET FORTH IN EXHIBIT B ATTACHED. THE POLICY TO BE ISSUED MAY CONTAIN AN ARBITRATION CLAUSE. WHEN THE AMOUNT OF INSURANCE IS LESS THAN THAT SET FORTH IN THE ARBITRATION CLAUSE, ALL ARBITRABLE MATTERS SHALL BE ARBITRATED AT THE OPTION OF EITHER THE COMPANY OR THE INSURED AS THE EXCLUSIVE REMEDY OF THE PARTIES.  LIMITATIONS ON COVERED RISKS APPLICABLE TO THE CLTA AND ALTA HOMEOWNER'S POLICIES OF TITLE INSURANCE WHICH ESTABLISH A DEDUCTIBLE AMOUNT AND A MAXIMUM DOLLAR LIMIT OF LIABILITY FOR CERTAIN COVERAGES ARE SET FORTH IN THE POLICY. COPIES OF THE POLICY FORMS SHOULD BE READ.  THEY ARE AVAILABLE FROM THE OFFICE THAT ISSUED THIS REPORT.

**PLEASE READ THE EXCEPTIONS SHOWN OR REFERRED TO BELOW AND THE EXCEPTIONS AND EXCLUSIONS SET FORTH IN EXHIBIT A OF THIS REPORT CAREFULLY.  THE EXCEPTIONS AND EXCLUSIONS ARE MEANT TO PROVIDE YOU WITH NOTICE OF MATTERS WHICH ARE NOT COVERED UNDER THE TERMS OF THE TITLE INSURANCE POLICY AND SHOULD BE CAREFULLY CONSIDERED.**

**IT IS IMPORTANT TO NOTE THAT THIS PRELIMINARY REPORT IS NOT A WRITTEN REPRESENTATION AS TO THE CONDITION OF TITLE AND MAY NOT LIST ALL LIENS, DEFECTS AND ENCUMBRANCES AFFECTING TITLE TO THE LAND.**

THIS REPORT (AND ANY SUPPLEMENTS OR AMENDMENTS HERETO) IS ISSUED SOLELY FOR THE PURPOSE OF FACILITATING THE ISSUANCE OF A POLICY OF TITLE INSURANCE AND NO LIABILITY IS ASSUMED HEREBY.  IF IT IS DESIRED THAT LIABILITY BE ASSUMED PRIOR TO THE ISSUANCE OF A POLICY OF TITLE INSURANCE, A BINDER OR COMMITMENT SHOULD BE REQUESTED.

THE FORM OF POLICY OF TITLE INSURANCE CONTEMPLATED BY THIS REPORT IS:

[]     CALIFORNIA LAND TITLE ASSOCIATION/AMERICAN LAND TITLE ASSOCIATION
       HOMEOWNERS POLICY

[X]    AMERICAN LAND TITLE ASSOCIATION LOAN POLICY

[X]    CALIFORNIA LAND TITLE ASSOCIATION STANDARD POLICY

[]     AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL POLICY

ORDER NO. LA1060768

## SCHEDULE A

THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED
BY THIS REPORT IS:

A FEE AS TO PARCELS 1 AND 2, AN EASEMENT AS TO PARCEL 3.

TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

ART HOVSEPIAN, SUBJECT TO PROCEEDINGS PENDING IN THE BANKRUPTCY COURT OF THE
CENTRAL DISTRICT OF THE U. S. DISTRICT COURT, CALIFORNIA, ENTITLED IN RE: ART
HOVSEPIAN DEBTOR, CASE NO.27883-VK, WHEREIN A PETITION FOR RELIEF WAS FILED ON MAY
5, 2010

PLEASE NOTE:  BANKRUPTCY RULE NO. 6004.(g) STATES:  "AN ORDER AUTHORIZING THE USE,
SALE, OR LEASE OF PROPERTY OTHER THAN CASH COLLATERAL IS STAYED UNTIL THE
EXPIRATION OF 14 DAYS AFTER THE ENTRY OF THE ORDER, UNLESS THE COURT ORDERS
OTHERWISE."

AND ANAHID HOVSEPIAN, HUSBAND AND WIFE AS JOINT TENANTS

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

## SEE EXHIBIT "A" ATTACHED HERETO

2

ORDER NO. LA1060768

## EXHIBIT "A"

**PARCEL 1:**

THE SOUTHEASTERLY 82.5 FEET OF THE SOUTHWESTERLY 70 FEET OF THE SOUTHEASTERLY 152.5 FEET OF LOT 17 IN BLOCK 36, TOWN OF BURBANK, IN THE CITY OF BURBANK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 17, PAGE 19 ET SEQ. OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF SAID LAND DESCRIBED IN THE DEED TO THE CITY OF BURBANK RECORDED ON MAY 21, 1948 AS INSTRUMENT NO. 783, IN BOOK 27256, PAGE 202, OFFICIAL RECORDS, OF SAID COUNTY AND BEING DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 17; THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT, A DISTANCE OF 82.5 FEET TO THE MOST WESTERLY CORNER OF SAID SOUTHEASTERLY 82.5 FEET OF THE SOUTHWESTERLY 70 FEET OF THE SOUTHEASTERLY 152.50 FEET OF SAID LOT 17; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF SAID LAST DESCRIBED PARCEL, A DISTANCE OF 20 FEET TO A LINE PARALLEL WITH AND DISTANT NORTHEASTERLY 50 FEET, MEASURED AT RIGHT ANGLES, FROM THE CENTER LINE OF 4TH STREET, NOW GLENOAKS BOULEVARD, SHOWN AS 60 FEET WIDE ON SAID MAP OF TOWN OF BURBANK; THENCE SOUTHEASTERLY ALONG SAID PARALLEL LINE, 75.50 FEET; MORE OR LESS, TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY, HAVING A RADIUS OF 7 FEET; THENCE EASTERLY ALONG SAID CURVE, 10.99 FEET, MORE OR LESS, TO ITS POINT OF TANGENCY WITH THE SOUTHEASTERLY LINE OF SAID LOT 17; THENCE SOUTHWESTERLY ALONG SAID SOUTHEASTERLY LINE 27 FEET, MORE OR LESS, TO THE POINT FO BEGINNING.

**PARCEL 2:**

THE SOUTHEASTERLY 82.5 FEET OF THE NORTHEASTERLY 46 FEET OF THE SOUTHEASTERLY 152.5 FEET OF LOT 17, IN BLOCK 36 OF THE TOWN OF BURBANK, IN THE CITY OF BURBANK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 17, PAGE 19 ET SEQ, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 3:**

AN EASEMENT FOR UTILITIES AND ACCESS TO ALLEY OVER THE NORTHEASTERLY 10 FEET OF THE NORTHWESTERLY 70 FEET OF SAID SOUTHEASTERLY 152.5 FEET OF SAID LOT 17.

***END OF LEGAL DESCRIPTION***

3

ORDER NO. LA1060768

**SCHEDULE B**

AT THE DATE HEREOF EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM DESIGNATED ON THE FACE PAGE OF THIS REPORT WOULD BE AS FOLLOWS:

A.  GENERAL AND SPECIAL TAXES FOR THE FISCAL YEAR 2010-2011, A LIEN NOT YET DUE OR PAYABLE.

B.  GENERAL AND SPECIAL TAXES FOR THE FISCAL YEAR 2009-2010

| | | |
|---|---|---|
| TOTAL: | $4,368.78 | |
| FIRST INSTALLMENT: | $2,184.39 | DUE 6-30-10 |
| PENALTY: | $218.44 | |
| SECOND INSTALLMENT: | $2,184.39 | DUE 6-30-10 |
| PENALTY: | $228.44 | |

| | |
|---|---|
| ASSESSED VALUATION: | |
| LAND VALUE: | $246,000.00 |
| IMPROVEMENTS: | $154,000.00 |
| EXEMPTION: | $0.00 |

| | |
|---|---|
| CODE AREA: | 02530 |
| A. P. NO.: | 2455-036-016 |

| | |
|---|---|
| AFFECTS: | PARCEL 1 |

C.  THE LIEN OF DEFAULTED TAXES FOR THE FISCAL YEAR 2007-2008 AND SUBSEQUENT DELINQUENCIES.

| | |
|---|---|
| AMOUNT TO REDEEM: | $10,415.91 |
| VALID THROUGH: | MAY 31, 2010 |

| | |
|---|---|
| CODE AREA: | 02530 |
| A. P. NO.: | 2455-036-016 |

| | |
|---|---|
| AFFECTS: | PARCEL 1 |

D.  GENERAL AND SPECIAL TAXES FOR THE FISCAL YEAR 2009-2010

| | | |
|---|---|---|
| TOTAL: | $6,256.55 | |
| FIRST INSTALLMENT: | $3,128.28 | DUE 6-30-10 |
| PENALTY: | $312.83 | |
| SECOND INSTALLMENT: | $3,128.27 | DUE 6-30-10 |
| PENALTY: | $322.83 | |

| | |
|---|---|
| ASSESSED VALUATION: | |
| LAND VALUE: | $246,000.00 |
| IMPROVEMENTS: | $320,000.00 |
| EXEMPTION: | $0.00 |

| | |
|---|---|
| CODE AREA: | 02530 |
| A. P. NO.: | 2455-036-017 |

| | |
|---|---|
| AFFECTS: | PARCEL 2 |

4

ORDER NO. LA1060768

E.   THE LIEN OF DEFAULTED TAXES FOR THE FISCAL YEAR 2007-2008 AND SUBSEQUENT
     DELINQUENCIES.

|                 |                 |
|-----------------|-----------------|
| AMOUNT TO REDEEM: | $14,821.17    |
| VALID THROUGH:  | MAY 31, 2010    |
| CODE AREA:      | 02530           |
| A. P. NO.:      | 2455-036-017    |
| AFFECTS:        | PARCEL 2        |

F.   THE LIEN OF SUPPLEMENTAL TAXES ASSESSED PURSUANT TO CHAPTER 3.5 COMMENCING
     WITH SECTION 75 OF THE CALIFORNIA REVENUE AND TAXATION CODE.

1.   WATER RIGHTS, CLAIMS OR TITLE TO WATER, WHETHER OR NOT SHOWN BY THE PUBLIC
     RECORDS.

2.   THE TERMS AND PROVISIONS CONTAINED IN THE DOCUMENT ENTITLED "AGREEMENT"
     RECORDED IN BOOK 24364, PAGE 114, OF OFFICIAL RECORDS.

3.   A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
     AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $900,000.00 |
| DATED: | FEBRUARY 25, 2004 |
| TRUSTOR: | ART HOVSEPIAN AND ANAHID HOVSEPIAN, HUSBAND AND WIFE AS JOINT TENANTS |
| TRUSTEE: | FIDELITY NATIONAL TITLE INSURANCE COMPANY |
| BENEFICIARY: | M. S. HUNGERFORD AND E. M. SCALA, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP |
| RECORDED: | APRIL 29, 2004 AS INSTRUMENT NO. 04-1052093, OF OFFICIAL RECORDS. |
| LOAN NO.: | NONE SHOWN |

ACCORDING TO THE PUBLIC RECORDS, THE BENEFICIAL INTEREST UNDER THE DEED
OF TRUST WAS ASSIGNED TO M. S. HUNGERFORD AND E. M. SCALA, TRUSTEES OF
THE I NIPOTINI INVESTMENT TRUST DATED MARCH 13, 2006, AS COMMUNITY
PROPERTY BY ASSIGNMENT RECORDED AUGUST 16, 2006 AS INSTRUMENT NO. 06-
1824341, OF OFFICIAL RECORDS.

PLEASE NOTE: IF THIS LOAN IS TO BE PAID AS A SHORT PAY, PLEASE CONTACT
THIS OFFICE FOR ADDITIONAL REQUIREMENTS AT LEAST TEN DAYS PRIOR TO
CLOSING.

ORDER NO. LA1060768

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING:

    A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
       RECONVEYANCE.

    B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
       RECONVEYANCE EXECUTED BY THE BENEFICIARY.

    C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
       THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT
AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE
TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR
EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE
BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE
REQUIRED.

4.   A FINANCING STATEMENT

    DEBTOR:          ART HOVSEPIAN AND ANAHID HOVSEPIAN
    SECURED PARTY:  E. M. SCALA
    RECORDED:      APRIL 29, 2004 AS INSTRUMENT NO. 04-1052095, OF OFFICIAL
                   RECORDS.

5.   A LIEN FOR UNSECURED PROPERTY TAXES, EVIDENCED BY A CERTIFICATE
    RECORDED BY THE TAX COLLECTOR OF LOS ANGELES COUNTY

    DEBTOR:          HOVSEPIAN ART
    YEAR & NO.:     08/47062858
    AMOUNT:         $1,399.61, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:      DECEMBER 5, 2008 AS INSTRUMENT NO. 20082144428, OF
                   OFFICIAL RECORDS.

6.   A LIEN IN FAVOR OF THE STATE OF CALIFORNIA, EVIDENCED BY A CERTIFICATE
    ISSUED BY THE FRANCHISE TAX BOARD

    DEBTOR:          ANAHID A. HOVSEPIAN
    CERTIFICATE NO.: 08337456186
    AMOUNT:         $5,159.80, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:      DECEMBER 12, 2008 AS INSTRUMENT NO. 20082185523, OF
                   OFFICIAL RECORDS.

6

ORDER NO. LA1060768

7. **A FEDERAL TAX LIEN IN FAVOR OF THE UNITED STATES OF AMERICA**

    **SERIAL NO.:**     623176210
    **DEBTOR:**         ANAHID A. HOVSEPIAN
    **AMOUNT:**        $35,334.47, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    **RECORDED:**     FEBRUARY 16, 2010 AS INSTRUMENT NO. 20100204326, OF
                          OFFICIAL RECORDS.

8. RIGHTS OF PARTIES IN POSSESSION OF SAID LAND BY REASON OF ANY UNRECORDED LEASES.

    PLEASE SUBMIT ANY SUCH LEASES TO THIS COMPANY FOR OUR EXAMINATION.

9. **A LEASE DATED DECEMBER 15, 2006 EXECUTED BY ART HOUSEPIAN AS LESSOR AND ALEK HOUSEPIAN AS LESSEE, RECORDED APRIL 21, 2010.**

10. ANY DEFECTS, LIENS, ENCUMBRANCES OR OTHER MATTERS WHICH NAME PARTIES WITH THE SAME OR SIMILAR NAMES AS THE VESTEE(S).

7

ORDER NO. LA1060768

## REQUIREMENTS:

11. PRIOR TO THE ISSUANCE OF ANY POLICY OF TITLE INSURANCE, THE COMPANY WILL REQUIRE:

A. THE NAME SEARCH NECESSARY TO ASCERTAIN THE EXISTENCE OF MATTERS REFERRED TO IN ITEM NO. 9 HAS NOT BEEN COMPLETED. IN ORDER TO COMPLETE THIS PRELIMINARY REPORT OR COMMITMENT, WE WILL REQUIRE A STATEMENT OF INFORMATION.

IMPORTANT: PLEASE FORWARD THE STATEMENT OF INFORMATION TO US AS SOON AS POSSIBLE, BUT NO LATER THAN 10 WORKING DAYS BEFORE CLOSING. THIS WILL HELP TO AVOID ANY LAST MINUTE DELAYS WITH YOUR CLOSING AND RECORDING.

***END OF SCHEDULE B***

8

ORDER NO. LA1060768

## NOTES:

**NOTE:** EFFECTIVE JANUARY 1, 1990, ASSEMBLY BILL 512, ENACTED AS CHAPTER 598, WILL ADD SECTION 12413.1 TO THE CALIFORNIA INSURANCE CODE DEALING WITH THE "GOOD FUNDS" ISSUE.  FUNDS DEPOSITED BY:

- ❑ CASH AND BY ELECTRONIC TRANSFER (WIRED FUNDS) WILL BE AVAILABLE FOR SAME DAY DISBURSEMENTS.
- ❑ CASHIER'S CHECKS, CERTIFIED CHECKS AND TELLER'S CHECKS WILL BE AVAILABLE FOR NEXT DAY DISBURSEMENTS.
- ❑ ALL OTHER TYPES OF CHECKS WILL NOT BE AVAILABLE FOR DISBURSEMENT UNTIL THE DAY PROVIDED IN REGULATION CC ADOPTED BY THE FEDERAL RESERVE BOARD OF GOVERNORS.
- ❑ A DRAFT WILL NOT BE AVAILABLE FOR DISBURSEMENT UNTIL THE DRAFT HAS BEEN SUBMITTED FOR COLLECTION AND PAYMENT RECEIVED BY OUR BANK.

**PLEASE NOTE:**  THIS COMPANY WILL MAKE DISBURSEMENTS ONLY IN THE SAME MANNER AS WHICH FUNDS ARE RECEIVED.  SHOULD THIS COMPANY BE REQUESTED TO MAKE ANY DISBURSEMENTS BY ELECTRONIC TRANSFER (WIRED FUNDS), THIS COMPANY WILL REQUIRE FUNDS TO BE DEPOSITED TO OUR ACCOUNT BY ELECTRONIC TRANSFER.

WIRE TRANSFER INSTRUCTIONS ARE AS FOLLOWS:

COMERICA BANK
2321 ROSECRANS AVENUE,# 5000
EL SEGUNDO,CA 90245

ABA # 121137522
CREDIT:  EQUITY TITLE COMPANY -- **(LA1060768, ANNE M WANG)**
ACCOUNT # 1891608711

(SHOULD THE ABOVE WIRE INSTRUCTION BE INCOMPLETE OR INCORRECT, WIRES WILL BE RETURNED WITHOUT NOTICE.)

SHOULD YOU HAVE ANY QUESTIONS IN THIS REGARD PLEASE CONTACT YOUR TITLE OFFICER IMMEDIATELY.

**UNLESS OTHERWISE AGREED IN WRITING, EACH OF THE PRINCIPALS AGREES, UNDERSTANDS AND ACKNOWLEDGES THAT:  THE ESCROW ACCOUNT IS NON-INTEREST-BEARING; NO FINANCIAL OR OTHER BENEFITS WILL BE EARNED BY OR PROVIDED TO ANY OF THE PRINCIPALS WITH RESPECT TO SUCH FUNDS' AND EQUITY TITLE COMPANY AND ITS AFFILIATES MAY INSTEAD RECEIVE DIRECT AND INDIRECT FINANCIAL AND OTHER BENEFITS FROM THE DEPOSITORY WITH RESPECT TO SUCH FUNDS THESE BENEFITS SHALL BE TREATED AS ADDITIONAL COMPENSATION TO EQUITY TITLE COMPANY FOR ITS SERVICES AS AN ESCROW HOLDER IN THIS TRANSACTION.**

ORDER NO. LA1060768

**NOTE:** THIS COMPANY DOES REQUIRE CURRENT BENEFICIARY DEMANDS PRIOR TO CLOSING. IF THE DEMAND IS EXPIRED AND A CURRENT DEMAND CANNOT BE OBTAINED, OUR REQUIREMENTS WILL BE AS FOLLOWS:

A.  IF THIS COMPANY ACCEPTS A VERBAL UPDATE ON THE DEMAND, WE WILL HOLD AN AMOUNT EQUAL TO ONE MONTHLY MORTGAGE PAYMENT PLUS INTEREST.  THIS HOLD WILL BE UP AND ABOVE THE VERBAL HOLD THE LENDER MAY HAVE STIPULATED.

B.  IF THIS COMPANY CANNOT OBTAIN A VERBAL UPDATE ON THE DEMAND, WE WILL HOLD TOTAL PROCEEDS UNTIL A CURRENT DEMAND IS RECEIVED.

**NOTE:** THE SELLER/BORROWER HEREBY AGREES TO ALLOW EQUITY TITLE COMPANY TO HOLD SUFFICIENT FUNDS FOR ALL DELINQUENT TAXES AS SHOWN HEREIN, UNTIL SUCH TIME AS PROOF OF PAYMENT IS PROVIDED AND/OR EQUITY TITLE COMPANY IS AUTHORIZED TO PAY SAID TAXES.

ORDER NO. LA1060768

# EQUITY TITLE COMPANY

425 W. BROADWAY SUITE 300
GLENDALE, CA 91204
PHONE: (800) 373-7500

YOUR NO.:
OUR NO.:   LA1060768
DATE: MAY 5, 2010 AT 7:30 A.M.

ANNE M WANG, TITLE OFFICER

## UPDATED LENDERS SUPPLEMENTAL REPORT

THE ABOVE NUMBERED REPORT (INCLUDING ANY SUPPLEMENTS OR AMENDMENTS THERETO) IS HEREBY MODIFIED AND/OR SUPPLEMENTED IN ORDER TO REFLECT THE FOLLOWING ADDITIONAL ITEMS RELATING TO THE ISSUANCE OF AN AMERICAN LAND TITLE ASSOCIATION LOAN FORM POLICY AS FOLLOWS:

THIS REPORT IS PREPARATORY TO THE ISSUANCE OF AN ALTA LOAN POLICY. WE HAVE NO KNOWLEDGE OF ANY FACT WHICH WOULD PRECLUDE THE ISSUANCE OF THE POLICY WITH CLTA ENDORSEMENT FORMS 100 AND 116 ATTACHED.

WHEN ISSUED, THE CLTA ENDORSEMENT FORM 116 WILL REFERENCE A COMMERCIAL STRUCTURE

KNOWN AS

**413 EAST MAGNOLIA BOULEVARD AND 400 NORTH GLENOAKS BOULEVARD, IN THE CITY OF BURBANK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.**

ACCORDING TO THE PUBLIC RECORDS, THERE HAVE BEEN NO DEEDS CONVEYING THE LAND DESCRIBED HEREIN WITHIN A PERIOD OF TWENTY-FOUR (24) MONTHS PRIOR TO THE DATE OF THIS REPORT, EXCEPT AS FOLLOWS:

NONE.

11

12



Page 1 of 4

Printed on 4/14/2010 8:10:13 AM   Provided by Data Trace System

Document: 2455.36

2007

2455 | 36

This plat is for your aid in locating your land with reference to streets and other parcels. While the plat is believed to be correct, the company assumes no liability for any loss occurring by reason of reliance thereon.

Title Officer: 60  Order: LA1060768  Comment:

# EQUITY TITLE COMPANY

# PRIVACY POLICY

## We are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

## Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

## Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

*   Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;

*   Information about your transactions with us, our affiliated companies, or others; and

*   Information we receive from a consumer reporting agency.

## Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and companies involved in real estate services, such as home warranty companies.

## Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

## Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to help ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

# EQUITY TITLE COMPANY
### Available Discounts

EQUITY TITLE COMPANY is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.
Such discounts could apply to:

- Property located within an area proclaimed a state or federal disaster area
- Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale
- Property being refinanced

**Please talk with your title officer to determine your qualification for any of these discounts.**

## EXHIBIT B
## LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (By Policy Type)

### 1. CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990
#### SCHEDULE B
#### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

#### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable "doing business" laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by their policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### 2. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
#### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
#### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy ( except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at date of policy); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable "doing business" laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
   (a) to timely record the instrument of transfer; or
   (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

### 3. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
#### WITH REGIONAL EXCEPTIONS
When the American Land Title Association Policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy, the exclusions set forth in paragraph 6 above are used and the following exceptions to coverage appear in the policy.

#### SCHEDULE B
This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3. Easements, claims of easement or encumbrances which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

#### 4. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
##### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4. Any claim, which arises out of the transaction vesting in the insured estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
      (a) to timely record the instrument of transfer; or
      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

#### 5. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
##### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 5 above are used and the following exceptions to coverage appear in the policy.

##### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3. Easements, claims of easement or encumbrances which are not shown by public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

#### 6. AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL TITLE INSURANCE POLICY - 1987
##### EXCLUSIONS

In addition to exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   land use                     land division                  improvements on the land                  environmental protection
This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless:
   a notice of exercising the right appears in the public records on the Policy Date
   the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking.
3. Title Risks:
   that are created, allowed or agreed to by you
   that are known to you, but not to us, on the Policy Date - unless they appeared in the public records
   that result in no loss to you
   that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4. Failure to pay value for your title.
5. Lack of a right:
   to any land outside the area specifically described and referred to in Item 3 of Schedule A, or
   in streets, alleys, or waterways that touch your land
This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

#### 7. CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 2003
#### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 2003
Covered Risks 14 (Subdivision Law Violation), 15 (Building Permit), 16 (Zoning) and 18 (Encroachment of boundary walls or fences) are subject to Deductible Amounts and Maximum Dollar Limits of Liability
##### EXCLUSIONS

In addition to the exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   (a) building
   (b) zoning
   (c) land use;
   (d) improvements on the land
   (e) land division
   (f) environmental protection.
This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3. The right to take the land by condemning it, unless:
   (a) a notice of exercising the right appears in the public records on the Policy Date; or
   (b) the taking happened before the Policy Date and is binding on You if You bought the land without Knowing of the taking.
4. Risks:
   (a) that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   (b) that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   (c) that result in no loss to You; or
   (d) that first occur after the Policy Date -- this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.
5. Failure to pay value for Your Title.
6. Lack of a right:
   (a) to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   (b) in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

#### 8. ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (10/13/01)
##### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or area of the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without Knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the Insured Claimant;

(b) not known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (this paragraph does not limit the coverage provided under Covered Risks 8, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26); or
(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured at Date of Policy, or the inability or failure of any subsequent owner of the Indebtedness, to comply with applicable doing business laws of the state in which the Land is situated.
5.   Invalidity or unenforceability of the lien of the Insured Mortgage, or claim thereof, which arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, except as provided in Covered Risk 27, or any consumer credit protection or truth in lending law.
6.   Real property taxes or assessments of any governmental authority which become a lien on the Land subsequent to Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 7, 8(e) and 26.
7.   Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This exclusion does not limit the coverage provided in Covered Risk 8.
8.   Lack of priority of the lien of the Insured Mortgage as to each and every advance made after Date of Policy, and all interest charged thereon, over liens, encumbrances and other matters affecting the title, the existence of which are Known to the Insured at:
     (a)   The time of the advance; or
     (b)   The time a modification is made to the terms of the Insured Mortgage which changes the rate of interest charged, if the rate of interest is greater as a result of the modification than it would have been before the modification. This exclusion does not limit the coverage provided in Covered Risk 8.
9.   The failure of the residential structure, or any portion thereof to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at Date of Policy.

## 9. 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
     (i)     the occupancy, use, or enjoyment of the Land;
     (ii)    the character, dimensions, or location of any improvement erected on the Land;
     (iii)   the subdivision of land; or environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
     (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
     (a) created, suffered, assumed, or agreed to by the Insured Claimant;
     (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
     (c) resulting in no loss or damage to the Insured Claimant;
     (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
     (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
     (a) a fraudulent conveyance or fraudulent transfer, or
     (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## 10. 2006 ALTA LOAN POLICY (06-17-06)
### WITH REGIONAL EXCEPTIONS
When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 9 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B
This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One:
1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.   Easements, claims of easement or encumbrances which are not shown by public records.
4.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.   Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.   Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

## 11. 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
     (i) the occupancy, use, or enjoyment of the Land;
     (ii) the character, dimensions, or location of any improvement erected on the Land;
     (iii) the subdivision of land; or
     (iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
     (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
     (a) created, suffered, assumed, or agreed to by the Insured Claimant;
     (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
     (c) resulting in no loss or damage to the Insured Claimant;
     (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
     (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
     (a) a fraudulent conveyance or fraudulent transfer; or
     (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## 12. 2006 ALTA OWNER'S POLICY (06-17-06)
### WITH REGIONAL EXCEPTIONS
When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B
This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One:
1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.   Easements, claims of easement or encumbrances which are not shown by public records.
4.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.   Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.   Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.





Title Officer: 60  Order: LA1060768  Comment:

Recording requested by:
MARK J. SALADINO
TAX COLLECTOR
COUNTY OF LOS ANGELES

When recorded mail to:

HOVSEPIAN ART
400 N GLENOAKS BL
GLENDALE CA 91502

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

# 20082144428
12/05/2008 05:08:47
FEE $0.00

## CERTIFICATE OF TAX LIEN

FILED BY      LOS ANGELES COUNTY TAX COLLECTOR        CERTIFICATE NUMBER: 08324-16092
225 North Hill St., Rm. 122
Los Angeles, California 90012

I, MARK J. SALADINO, TAX COLLECTOR of the County of Los Angeles, State of California, in compliance with the provisions of Section 2191.3 of the Revenue and Taxation Code, do hereby certify that there are on record in my office delinquent unsecured property taxes which were duly assessed, computed and levied together with penalties and costs prescribed by law for the years and in the amounts set forth below. Additional penalties will accrue on said taxes at the rate of 1 ½ % on the 1st day of each month beginning on the second month after delinquency.

NAME OF ASSESSEE:
HOVSEPIAN ART
400 N GLENOAKS BL
GLENDALE CA 91502

YEAR/BILL NUMBER:        08/47062858

INDEX NUMBER:

SITUS OR ADDRESS:        3636 FIGOERO ST
GLENDALE

| TAX AMOUNT | COLLECTION COST | TOTAL LIEN AMOUNT | AMOUNT DUE** |
|---|---|---|---|
| 1350.61 | 49.00 | 1399.61 | Call Number Below |

**  For current amount due, call (213) 893-7935. Upon payment of the tax and all applicable penalties, a Release of Lien will be mailed to you along with recording instructions.

From the time of recordation of this certificate, for a period of ten years or any extension thereof, the amount required to be paid as shown herein together with all accrued interest and penalties thereon will constitute a lien upon all real and personal property owned or hereafter acquired by the above names assessee with the County of Los Angeles. A certified copy of the recorded lien will be mailed to you under separate cover by the Los Angeles County Registrar-Recorder's Office.

NOTE:
There will be a service charge for any check
Returned by the bank for any reason.

MARK J. SALADINO, TAX COLLECTOR
COUNTY OF LOS ANGELES

FIDELITY-VAN NUYS

4/29/04

RECORDING REQUESTED BY:
Fidelity National Title

04  1052092

WHEN RECORDED MAIL TO:
Art Hovsepian
Anahid Hovsepian
3636 Figueroa Street
Glendale, CA  91206

_____ Space Above This Line for Recorder's Use Only _____

Assessors Parcel No.: 2455-036-016/017      Title Order No.: 19327377                    Escrow No.: 60632-C

## GRANT DEED



THE UNDERSIGNED GRANTOR(S) DECLARE(S) – DOCUMENTARY TRANSFER TAX: **$1,265.00**  CITY TAX: None
[ X ]  Computed on full value of property conveyed; or
[   ]  Computed on full value of property conveyed less value of liens or encumbrances remaining at time of sale.
[   ]  Unincorporated area;  [ X ] City of Burbank,

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

E. M. Scala, a married woman as her sole and separate property, who acquired title as E. M. Perry, an unmarried woman

HEREBY GRANT(S) TO:

Art Hovsepian and Anahid Hovsepian, husband and wife as joint tenants

The following described real property in the City of Burbank, County of Los Angeles, State of California:

The Southeasterly 82.5 feet of the Southwesterly 70 feet of the Southeasterly 152.5 feet of Lot 17, in Block 36, Town of Burbank, in the City of Burbank, County of Los Angeles, State of California, as per Map recorded in Book 17 Page 19 et seq., of Miscellaneous Records, in the Office of the County Recorder of said County.

EXCEPT therefrom that portion of said land described in deed to the City of Burbank recorded on May 21, 1948 as Instrument No. 783, in Book 27256, Page 202, Official Records, of said County.

**COMPLETE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "ONE".**

SEE SIGNATURE PAGE ATTACHED HERETO AND MADE A PART HEREOF

4/29/04

A.P.N.: 2455-036-016/017

## SIGNATURE PAGE FOR GRANT DEED

E. M. Scala

Date: February 27, 2004

STATE OF CALIFORNIA )SS
COUNTY OF _Los Angeles_ )
On _April 22, 2004_ before me, _Debra Hudak, Notary Public_
personally appeared _E. M. Scala_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

This area for official notarial seal.

Signature _Debra Hudak_

DEBRA HUDAK
COMM. #1387452
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 28, 2006

04 1052092

4/29/04

# EXHIBIT "ONE"

4

Parcel 1:

The Southeasterly 82.5 feet of the Southwesterly 70 feet of the Southeasterly 152.5 feet of Lot 17 in Block 36, Town of Burbank, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 17 Page 19 et seq., of Miscellaneous Records, in the office of the County Recorder of said county.

Except therefrom that portion of said land described in the deed to the City of Burbank recorded on May 21, 1948 as Instrument No. 783 in Book 27256 Page 202, Official Records, of said County and being described as follows:

Beginning at the most Southerly corner of said Lot 17; thence Northwesterly along the Southwesterly line of said Lot, a distance of 82.5 feet to the most Westerly corner of said Southeasterly 82.5 feet of the Southwesterly 70 feet of the Southeasterly 152.50 feet of said Lot 17; thence Northeasterly along the Northwesterly line of said last described parcel, a distance of 20 feet to a line parallel with and distant Northeasterly 50 feet, measured at right angles, from the center line of 4th Street, now Glenoaks Boulevard, shown as 60 feet wide on said Map of Town of Burbank; thence Southeasterly along said parallel line, 75.50 feet; more or less, to the beginning of a tangent curve concave Northerly, having a radius of 7 feet; thence Easterly along said curve, 10.99 feet, more or less, to its point of tangency with the Southeasterly line of said Lot 17; thence Southwesterly along said Southeasterly line 27 feet, more or less, to the point of beginning

Parcel 2:

The Southeasterly 82.5 feet of the Northeasterly 46 feet of the Southeasterly 152.5 feet of Lot 17 in Block 36 of the Town of Burbank, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 17 Page 19 et seq. of Miscellaneous Records, in the office of the County Recorder of said county.

Parcel 3:

An easement for utilities and access to alley over the Northeasterly 10 feet of the Northwesterly 70 feet of said Southeasterly 152.5 feet of said Lot 17.

Assessor's Parcel No: 2455-036-016-017

04 1052092

| In re: | CHAPTER 7 |
|---|---|
| Art Hovsepian,<br><br>Debtor(s). | CASE NUMBER 10-27883 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **CHAPTER 7 TRUSTEE'S MOTION FOR ORDERS: (1) APPROVING SALE OF REAL PROPERTY; AND (2) APPROVING PROPOSED OVERBIDDING PROCEDURE; SUPPORTING DECLARATIONS**
will be or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 18, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Glenn Ward Calsada    glenn@calsadalaw.com
- John-patrick M Fritz    jpf@lnbrb.com
- Vincent V Frounjian    vvf@pacbell.net
- Rosendo Gonzalez    rossgonzalez@earthlink.net
- Rosendo Gonzalez (TR)    rgonzalez@ecf.epiqsystems.com, gabgarcia@earthlink.net
- Joe M Lozano    notice@NBSDefaultServices.com
- Daren M Schlecter    daren@schlecterlaw.com
- Lindsey L Smith    lls@lnbrb.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Leon L Vickman    lvickman@pacbell.net
- Edward M Wolkowitz    emw@lnbrb.com

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **January 18, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 18, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**By Attorney Service:**
Hon. Victoria S. Kaufman
United States Bankruptcy Court
255 East Temple Street, Ctrm 1675
Los Angeles, CA 90012

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 18, 2011 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 9013-3.1

Label Matrix for local noticing
0973-2
Case 2:10-bk-27883-VK
Central District Of California
Los Angeles
Mon Jan 17 16:53:55 PST 2011

AMERICAN HONDA FINANCE
P O BOX 168088
IRVING TX 75016-8088

BAC Home Loan Servicing LP
7105 Corporate Dr
Plano, TX 75024-4100

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
ATTN: Bankruptcy
P.O. Box 2952
Sacramento, CA 95812-2952

JP Morgan Chase Bank Department
PO Box 201347
Arlington, TX 76006-1347

Los Angeles City Clerk
P.O. Box 53200
Los Angeles, CA 90053-0200

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Adventist Health Glendale Med Ctr
DEP 2086
Los Angeles, CA 90084-0001

Alek Hovsepian
c/o Law Office of Daren M. Schlecter
1875 Century Park East, Suite 1000
Los Angeles, CA 90067-2533

Anahid Hovsepian
10324 TujungaCanyon
Tujunga, CA 91042-1822

Anahid Hovsepian
c/o Adina Teresa Turman, Esq.
PO Box 50003
Pasadena, CA 91115-0003

BAC Home Loans Servicing, LP
PO Box 515503
Los Angeles, CA 90051-6803

BAC LOAN SERVICING,LP
400 NATIONAL WAY,MAIL STOP CA6-919-01-23
SIMI VALLEY,CALIFORNIA 93065-6414

Bank of Ameica
PO Box 5170
Simi Valley, CA 93062-5170

Bank of America
National Enterprise Systems
29125 Solon Road
Solon, OH 44139-3442

Bank of America
c/o Creditors Interchange
80 Hotz Drive
Buffalo, NY 14225-1470

Bank of America
c/o ERS Solutions Inc
PO Box 9004
Renton, WA 98057-9004

Bank of America
c/o Frederick J. Hanna & Associates
1427 Roswell Rd
Marietta, GA 30062-3668

Bank of America
c/o Hunt & Henriques
151 Bernal Rd, Suite 8
San Jose, CA 95119-1306

Bank of America, N.A.
P. O. Box 26012
NC4-105-03-14
Greensboro, NC 27420-6012

Beachwood Escrow
Attn.: Sally Lucero, Sr.Escrow Officer
1509 West Magnolia Blvd.
Burbank, CA 91506-1835

Daily New Los Angeles
211221 Oxnard St.
Woodland Hills, CA 91365

Debtor
Art Hovsepian
400 N. Glenoaks Blvd.
Burbank, CA 91502-1120

Debtor's Attorney
Glenn Ward Calsada, Esq.
9924 Reseda Boulevard
Northridge, CA 91324-1509

EXPRESS PIPE & SUPPLY CO INC
C/O MICHAEL A SCHERAGO ESQ
12400 WILSHIRE BLVD STE 920
LOS ANGELES CA 90025-1040

Express Pipe & Supply
c/o William D. Locher, Esq.
1880 Century Park East, 12th Fl.
Los Angeles, CA 90067-1600

Fia Card Services, NA As Successor In Intere
Bank of America NA and Mbna America Bank
1000 Samoset Drive
DE5-023-03-03
Newark, DE 19713-6000

Glendale Adventist Med Center
1509 Wilson Terrace
Glendale, CA 91206-4098

Guy Lopez
4814 N. McCord Rd
Sylvania, OH 43560-3129

Hungerford and E.M. Scala
PO Box 1701
Simi Valley, CA 93062-1701

JP Morgan Chase
c/o Tate & Kirlin Associates
2810 Southhampton Road
Philadelphia, PA 19154-1207

JP Morgan Chase Bank
c/o National Action Financial Services,
165 Lawrence Bell Dr., Suite 100
Williamsville, NY 14221-7900


KEYBANK
C/O WELTMAN, WEINBERG & REIS
323 W. LAKESIDE AVE., 2ND FL
CLEVELAND, OH 44113-1085

Kalachi Enterprises Inc.
c/o Beachwood Escrow
1509 West Magnolia Blvd.
Burbank, CA 91506-1835

Keybank National Association
c/o Winn Law Group
110 E. Wilshire Ave., Suite 212
Fullerton, CA 92832-1960


Los Angeles County Tax Collector
PO Box 54017
Los Angeles, CA 90054-0017

Los Angeles County Treasurer and Tax Collect
PO Box 54110
Los Angeles, CA 90054-0110

Los Angeles Times
1210 N. Azusa Canyon Rd.
West Covina, CA 91790-1003


Los Angeles Times
c/o Biehl&Biehl Inc
325 E. Fullerton Ave.
Carol Stream, IL 60188-1865

M.S. Hungerford and E.M. Scala, Trustees
c/o Leon L. Vickman, A Law Corporation
4646 White Oak Avenue
Encino, CA 91316-3831

M.S. Hungerford and E.M. Scala, Trustees
of the Nipotini Trust
c/o Leon L. Vickman, a Law Corporation
4646 White Oak Avenue
Encino, CA 91316-3831


Shankar Lakshman, M.D.
1044 South Fair Oaks Ave.
Suite 101
Pasadena, CA 91105-2622

Stella Kalachi
c/o Beachwood Escrow
1509 West Magnolia Blvd.
Burbank, CA 91506-1835

(p)TOYOTA MOTOR CREDIT CORPORATION
PO BOX 8026
CEDAR RAPIDS IA 52408-8026


Toyota Motor Credit Corporation
3200 West Ray Road
Chandler, AZ 85226-2450

U.S. Trustee (LA)
725 S. Figueroa St., #2600
Los Angeles, CA 90017-5413

United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017-5524


eCAST Settlement Corporation
POB 29262
New York, NY 10087-9262

Art Hovsepian
400 N. Glenoaks Blvd.
Burbank, CA 91502-1120

Glenn Ward Calsada
Law Offices of Glenn W Calsada
9924 Reseda Blvd
Northridge, CA 91324-1509


Leon Vickman, Esq.
4646 White Oak Avenue
Encino, CA 91316-3831

Rosendo Gonzalez (TR)
Gonzalez & Associates
530 S. Hewitt Street, Suite 148
Los Angeles, CA 90013-1906


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


AMERICAN HONDA FINANCE CORPORATION
3625 W. Royal Lane, Suite 200
Irving, TX 75063

(d)American Honda Finance
PO Box 60001
City of Industry, CA 91716

Toyota Financial Services
PO Box 60114
City of Industry, CA 91716

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Shoreline Westside Realty

(d)Los Angeles County Tax Collector
PO Box 54017
Los Angeles, CA 90054-0017

(d)Alek Hovsepian
c/o Law Office of Daren M. Schlecter
1875 Century Park East
Suite 1000
Los Angeles, CA 90067-2533

(u)Anahid Hovsepian

End of Label Matrix
Mailable recipients    52
Bypassed recipients     4
Total                  56

II.      **SERVED VIA U.S. MAIL**:

No. 1 State Plumbing
400 Glenoaks Blvd.
Burbank, CA 91502

Alek Hovsepian
400 Glenoaks Blvd.
Burbank, CA 91502

Susan Mai Truong, dba Modern Nails
415 East Magnolia Blvd.
Burbank, CA 91501

Michael R. Fukushima
Senior Vice President
Total Realty Group
3600 Wilshire Blvd., suite 300
Los Angeles, CA 90010

Ira Pouratian
JP & Assoc. Real Estate
325 N. Oakhurst Dr., #503
Beverly Hills, CA 90210

Scott Crane
NAI Capital
1640 S. Sepulveda Blvd, Suite 500
Los Angeles, CA 90025

III.    **SERVED VIA EMAIL**:

Michael R. Fukushima: mfukushima@total-investment.com

Steve Hovakimyan: Stevehovakimyan@remax.net; ezharry@aol.com

Richard Mayor: richard@rpmayerco.com

Ira Pouratian: irapou@yahoo.com

Raj kaul: RKaul@electroglas.com

Brian DeRosayro: rosayro@gmail.com

Cam Mersola: cammersola@yahoo.com

Scott Crane: Scrane@naicapital.com

Josephine Chung: josephinee@sbcglobal.net

Steven Guitierez-Kovner: sgutierrezkovner@cfgfs.com