EDWARD M. WOLKOWITZ (State Bar. No. 68298)
KRIKOR J. MESHEFEJIAN (State Bar No. 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: emw@lnbyb.com; kjm@lnbyb.com

Attorneys for Rosendo Gonzalez,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:10-bk-27883-VK |
| ART HOVSEPIAN, | Chapter 7<br>[Converted from Chapter 13]<br>[Assigned to Hon. Peter H. Carroll] |
| Debtor. | **CHAPTER 7 TRUSTEE'S REPLY TO OBJECTIONS TO MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY; DECLARATION OF KRIKOR J. MESHEFEJIAN, ESQ. IN SUPPORT THEREOF** |
| | **Date: February 8, 2011**<br>**Time: 9:30 a.m.**<br>**Place: Courtroom 1539**<br>**255 East Temple Street**<br>**Los Angeles, California** |

Rosendo Gonzalez, Chapter 7 Trustee for the bankruptcy estate of Art Hovsepian (the "Debtor"), respectfully submits this reply to "Debtor's Objections To Chapter 7 Trustee's Motion For Order Approving Sale Of Real Property (the "Debtor's Objection") and "Creditor Alek Hovsepian's Objection To Chapter 7 Trustee's Motion For Order Approving Sale Of Real Property" (the "Insider Objection", and collectively with the Debtor's Objection, the "Objections"). The Objections should be overruled for the following reasons:

**A. The Debtor's Objection.**

1. <u>The Property Has Been Adequately Marketed</u>.

The Debtor's Objection baldly asserts that the Property has not been adequately marketed. Absolutely no evidence is provided to support this assertion. Instead, the Debtor merely argues that the Trustee's Broker is not qualified to market and sell the Property, despite the fact that:

(a) The Broker has been approved by this Court as qualified to market and sell the Property;

(b) The Broker has listed the Property on MLS and Loopnet – two reputable and well-known real property listing agencies, for many months;

(c) The Property is located in a high visibility, major thoroughfare with significant traffic and exposure;

(d) The Broker received in excess of 25 inquiries with respect to the Property. Seven offers have been made on the Property. The offers range in price from $850,000 to $1,250,000. The Buyer has offered $1,015,000, and there are no financing contingencies with the Buyer's offer. The Buyer has already provided the Trustee with a $101,500 deposit (10% of the proposed purchase price);

(e) The sale of the Property is subject to overbidding, and the Debtor does not argue or assert that proper notice of the sale has not been provided. On the contrary, the auction has been heavily advertised on Loopnet and the MLS, the notice of sale of estate property has been published on the Court's website, and the sale notice has been served upon any and all known interested potential buyers.

The Debtor's assertions in the face of these facts ring hollow. The Property has been

extensively marketed and the proposed sale of the Property is subject to overbids. The Debtor has not objected to the overbidding procedures proposed by the Trustee. The Debtor is simply attempting to throw mud against the wall in the hope that something will stick, for no apparent purpose, other than perhaps delay the sale so the Debtor can continue using a portion of the Property rent-free.

2. The Proposed Sale Is Clearly Fair, Reasonable, And In Good Faith.

The Debtor's Objection also erroneously asserts that the Broker caused the Buyer to reduce its offer. This argument is based on an "apples to oranges" comparison of an offer made by the same Buyer *pre-bankruptcy*. It is unclear why the Debtor believes that a pre-bankruptcy offer, which did not include any overbidding requirements, or a 10% deposit, or the elimination of all contingencies, is comparable or even relevant to this bankruptcy sale. It was of course the Debtor who voluntarily filed for bankruptcy, and who was unable to sell the Property prior to filing bankruptcy.

The Debtor argues that due to the post-bankruptcy reduction of the purchase price by $250,000, the proposed offer of the Buyer is not made in good faith. The Debtor has attached the pre-bankruptcy offer to his Objection. The pre-bankruptcy offer provides for a deposit of $37,950 (approximately $70,000 less than what the Trustee has received from the Buyer), and the pre-bankruptcy offer does not include any overbidding protections for the estate, and did include various loan contingencies. The current offer, for which the Trustee seeks court approval, contains no financing contingencies and is subject to overbidding. The agreement was reached between the Trustee and the buyer after significant negotiations were conducted and numerous counter-offers were exchanged (as evidenced by the purchase agreement documents submitted with the Trustee's Sale Motion). The Debtor also asserts that the "Trustee omits any mention of the Kalachi Enterprises, Inc., escrow rejected by the Trustee" but that irrelevant assertion completely ignores the fact that the Kalachi Offer was made on June 10, 2010, for a purchase price of $1,050,000 and included a financing contingency for the procurement of financing of at least $650,000. As the Trustee explained in the Sale Motion, the Trustee submitted a counter-offer to Kalachi and Kalachi did not accept the Trustee's counter offer. Furthermore, Kalachi will

have an opportunity to bid on the Property at the sale hearing. The proposed sale is fair and reasonable and is subject to the most accurate and reliable test of all – the marketplace, via the Trustee's proposed overbid auction.

3. The Broker's Employment Application Has Already Been Approved By The Court And The Broker Has Obtained A Highly Favorable Purchase Commitment.

The Debtor argues that "the court should not award the Broker his full 6% commission" as if the broker's employment application is at issue during these sale proceedings. The Broker's employment application was approved many months ago and, at that time, the Debtor filed no objection to the Broker's employment. These matters are not at issue here, and the Broker has gone above and beyond what qualified commercial real estate brokers do to market and sell a distressed asset. The Broker has maintained communications with potential buyers; advertised the proposed sale and auction; assisted the Trustee in negotiating numerous offers and counter offers; and, ultimately obtained a binding commitment to purchase the Property along with a significant deposit. Indeed, the deposit received by the Trustee is three times the amount of cash the Debtor received from the very same Buyer, and the Buyer has agreed to subject the sale of the Property to overbids. The Debtor's arguments to the contrary are completely without substance. For the foregoing reasons, the Debtor's Objection should be overruled.

**B. The Insider's Objection**

1. Alek Hovsepian, An Insider Of The Debtor, Is Not A Secured Creditor Of The Debtor's Estate, And The Proof Of Claim That He Has Filed Is Invalid.

Alek Hovsepian is the Debtor's son, who recorded a ten-year lease with two five-year options, approximately two weeks prior to the filing of the Debtor's bankruptcy case. Until the Insider Objection was filed, the Trustee had no clue that Alek Hovsepian asserted a $400,000 secured claim against the Property. The Debtor who is related to Alek Hovsepian certainly did not schedule a secured claim in favor of Alek Hovsepian. (See annexed Declaration of Krikor J. Meshefejian, Exhibit "1".) Indeed, the claims bar date in this case had previously been set by the Court for December 14, 2010. (See id., Exhibit "2".) Alek Hovsepian filed his unsubstantiated

and untimely claim on January 15, 2011, only after the Trustee filed the Sale Motion. (See id., Exhibit "3".)

The Trustee is determining whether the lease at issue is avoidable, as the circumstances surrounding the recording of the lease are questionable, and the lease as interpreted by Alek Hovsepian is completely unfair and one-sided. While the validity of the lease is in dispute, it is undisputed that the lease at issue provides absolutely no lien against the Property in favor of the Debtor's son (there is no security agreement nor any security granting language in the lease itself). The Insider is not a secured creditor of the Debtor's estate, and his proof of claim is invalid. The Insider has not filed any other claim against the estate alleging lease rejection damages (which would be an unsecured claim). Merely recording a lease does not somehow give a lessee a secured $400,000 claim against the Property, particularly where the claim filed is untimely and unsubstantiated.

2. The Trustee Is Not Seeking To Sell The Property Free And Clear Of All Liens, Claims, And Encumbrances And, Therefore, Alek Hovsepian's Arguments Regarding Adequate Protection And Payment Of Lease Value Are Inapplicable.

Alek Hovsepian's Objection is geared entirely toward addressing the various requirements of sales of assets pursuant to 11 U.S.C. § 363(f) free and clear of lien, claims and encumbrances. However, the Trustee's proposed sale is not made pursuant to 11 U.S.C. § 363(f). The Trustee's Sale Motion has been brought under Section 363(b). The Trustee is not seeking a Court order extinguishing the leasehold interest, if any at this time. The Trustee believes that Alek Hovsepian's purported lease is highly suspect, and continues to investigate the lease. The lease has already been deemed rejected by operation of law. The Trustee filed the Sale Motion despite the existing contingency regarding the lease because the Trustee did not desire to lose the Buyer and because the Trustee believed that he would be able to resolve the lease issues with the Buyer and the lessee. This has not yet occurred, but the Trustee submits that the Sale Motion should be heard, and potential overbidders should be allowed to attend the auction and overbid on the Property.

Because the Trustee's proposed sale of the Property is not to be free and clear of liens, claims and encumbrances, the Insider's arguments regarding adequate protection, the payment of reasonable value of the lease pursuant to sale proceeds, or any other argument advanced under the theory that Alek Hovsepian is entitled to adequate protection under § 363(e) or (f) of the Bankruptcy Code is not applicable. Either the lease will ultimately be invalidated, the parties will agree to the treatment of the lease, or the sale of the Property will be made subject to any lease that is found to be valid. No other adequate protection is either available or necessary.

3. <u>The Proposed Sale Is In The Best Interests Of The Creditors Of The Estate</u>.

Alek Hovsepian argues that he is apparently "aware of concurrently filed objections to the instant bankruptcy sale[.]" Those objections were filed by his father, who alleges that higher and better offers exist for the sale of the Property. The Trustee and the Broker have every incentive to maximize sale proceeds and that is why they have actively marketed and continue to market the Property. That is why the sale of the property is subject to overbids.

Based on the Trustee's business judgment, the proposed offer by the Buyer is the highest and best offer. The offer by the Buyer has no financing contingencies and the Buyer has already delivered to the Trustee a $101,500 cash deposit for the purchase of the Property. The Trustee, in his business judgment, believes it is in the best interests of the estate and creditors to sell the Property to the Buyer or a qualified overbidder. Secured creditors with allowed claims will be paid in full at close of escrow. The sale of the Property shall be subject to overbidding, and the sale will generate adequate funds to pay all secured creditors in full, while leaving additional cash for the benefit of the Debtor's creditors. The sale of the Property as set forth herein will generate funds for the estate which would otherwise not be available to the estate. Accordingly, the sale of the Property is in the best interest of the estate and should be approved by the Court.

DATED: February 1, 2011

Respectfully submitted,

LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.

By: */s/ Krikor J. Meshefejian*
EDWARD M. WOLKOWITZ
KRIKOR J. MESHEFEJIAN
Attorneys for Rosendo Gonzalez
Chapter 7 Trustee

# DECLARATION OF KRIKOR J. MESHEFEJIAN

I, Krikor J. Meshefejian, hereby declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2. I am an attorney at Levene, Neale, Bender, Yoo & Brill L.L.P., counsel for the Chapter 7 Trustee in the above-referenced case.

3. I have personal knowledge of the facts set forth herein and if required to do so would testify to the accuracy of the facts herein.

4. Attached hereto as Exhibit "1" is Schedule D of the Debtor's Schedules of Assets and Liabilities, which I downloaded from the Court's docket. Schedule D does not list Alek Hovsepian as a creditor of the Debtor's estate.

5. Attached hereto as Exhibit "2" is the "Notice Of Possible Dividend And Order Fixing Time To File Claims" issued by the Court and served upon Alek Hovsepian. This Notice provides that the claims bar date is December 14, 2010.

6. Attached hereto as Exhibit "3" is the proof of claim filed by Alek Hovsepian which I downloaded from the Court's claims register. This proof of claim was filed on January 15, 2011.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of February, 2011, at Los Angeles, California.

*/s/ Krikor J. Meshefejian*
Krikor J. Meshefejian

# EXHIBIT "1"

In Re: Hovsepian, Art Case No. 2:10-bk-27883-VK
Debtor (if known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of the filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| Account Number: 97544913<br>American Honda Finance<br>P.O. Box 60001<br>City of Industry, CA 91716 | | | 2007 Honda Ridgeline RTL<br>Bus. Work Truck<br>Paid by Business<br>VALUE $ 20,000 | | | | 25,297.14 | |
| Account Number: 872462411<br>BAC Home Loans Servicing, LP<br>P.O. Box 515503<br>Los Angeles, CA 90051-6803 | | | 2nd T.D.<br>4814 N McCord Rd<br>Sylvania, OH 43560<br>[Property to be surrendered]<br>VALUE $ 110,000 | | | | 12,999 | |
| Account Number: 6859195155<br>Bank of America<br>P.O. Box 5170<br>Simi Valley, CA 93062-5170 | | | 1st T.D.<br>4814 N McCord Rd<br>Sylvania, OH 43560<br>[Property to be surrendered]<br>VALUE $ 110,000 | | | | 88,000 | |
| | | | | | | Subtotal (Total of this page) | $126,296.14 | $0.00 |
| | | | | | | Total (Use only on last page) | | |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

1 continuation sheets attached

Official Form 6D (12/07)

In Re: Hovsepian, Art — Case No. 2:10-bk-27883-VK
Debtor (if known)

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| Account Number:<br>Guy Lopez<br>4814 N McCord Rd<br>Sylvania, OH 43560 | | | Lien on Property<br>4814 N McCord Rd<br>Sylvania, OH 43560<br>VALUE $ 110,000 | | | | 30,000 | 30,000 |
| Account Number:<br>Hungerford and E.M. Scala<br>P.O. Box 1701<br>Simi Valley, Ca 93062 | | | Ist T.D.<br>400 Glenoaks<br>413 E. Magnolia Blvd<br>VALUE $ | | | | 748000 | |
| Account Number: 6404757<br>Toyota Financial Services<br>P.O. Box 60114<br>City of Industry, CA 91716 | | | 2007 Toyota Tacoma Access Bus. Work Truck<br>VALUE $ 10,000 | | | | 1200.11 | |
| Account Number: | | | VALUE $ | | | | | |
| Account Number: EC050571 | | | VALUE $ | | | | | |
| Account Number: | | | VALUE $ | | | | | |
| Account Number: | | | VALUE $ | | | | | |
| | | | | | | Subtotal (Total of this page) | $779,200.11 | $30,000.00 |
| | | | | | | Total (Use only on last page) | $905,496.25 | $30,000.00 |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

Sheet no. 1 of 1 continuation sheets attached to Schedule of Creditors Holding Secured Claims

# EXHIBIT "2"

# United States Bankruptcy Court
# Central District Of California

**255 East Temple Street, Los Angeles, CA 90012**

## NOTICE OF POSSIBLE DIVIDEND AND ORDER FIXING TIME TO FILE CLAIMS

**DEBTOR(S) INFORMATION:**
Art Hovsepian
**SSN:** xxx-xx-9504
**EIN:** N/A

400 N. Glenoaks Blvd.
Burbank, CA 91502

**BANKRUPTCY NO.** 2:10-bk-27883-VK
**CHAPTER** 7

Notice is hereby given that sufficient assets may become available for a distribution to creditors in the above-captioned bankruptcy case.

Therefore, in accordance with the provisions of Bankruptcy Rule 3002(c)(5), creditors must file their proofs of claim on or before December 14, 2010.

**ANY CREDITOR WHO HAS PREVIOUSLY FILED A PROOF OF CLAIM NEED NOT FILE AGAIN.**

A proof of claim form is on the reverse side of this notice.

Dated: September 10, 2010

For The Court,
**Kathleen J. Campbell**
Clerk of Court

B10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT Central District Of California** | **PROOF OF CLAIM**

Name of Debtor: Art Hovsepian

Case Number: 2:10-27883-VK

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Name and address where notices should be sent:

Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**__________
(*If known*)

Filed on:____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $____________

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** ____________
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** ____________

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property: $**________ **Annual Interest Rate**___**%**

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**________ **Basis for perfection:** ________

**Amount of Secured Claim: $**________ **Amount Unsecured: $**________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

***Amount entitled to priority:***

$________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:**

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**B10 (Official Form 10) (04/10) - Cont.**

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# CERTIFICATE OF NOTICE

District/off: 0973-2 User: LynnlC Page 1 of 2 Date Rcvd: Sep 10, 2010
Case: 10-27883 Form ID: ntcpdiv Total Noticed: 49

The following entities were noticed by first class mail on Sep 12, 2010.

db +Art Hovsepian, 400 N. Glenoaks Blvd., Burbank, CA 91502-1120
aty Adina T Turman, POB 50003, Pasadena, CA 91115-0003
aty +Levene, Neale, Bender, Rankin & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067-6253
smg Employment Development Dept., Bankruptcy Group MIC 92E, P.O. Box 826880, Sacramento, CA 94280-0001
smg Los Angeles City Clerk, P.O. Box 53200, Los Angeles, CA 90053-0200
intp +Alek Hovsepian, c/o Law Office of Daren M. Schlecter, 1875 Century Park East, Suite 1000, Los Angeles, CA 90067-2533
cr +BAC Home Loan Servicing LP, 7105 Corporate Dr, Plano, TX 75024-4100
intp +Leon Vickman, Esq., 4646 White Oak Avenue, Encino, CA 91316-3831
26338993 Adventist Health Glendale Med Ctr, DEP 2086, Los Angeles, CA 90084-0001
26338995 +Anahid Hovsepian, 10324 TujungaCanyon, Tujunga, CA 91042-1822
26338996 +Anahid Hovsepian, c/o Adina Teresa Turman, Esq., PO Box 50003, Pasadena, CA 91115-0003
26338997 BAC Home Loans Servicing, LP, PO Box 515503, Los Angeles, CA 90051-6803
26338998 Bank of Ameica, PO Box 5170, Simi Valley, CA 93062-5170
26339000 Bank of America, National Enterprise Systems, 29125 Solon Road, Solon, OH 44139-3442
26338999 +Bank of America, c/o Creditors Interchange, 80 Hotz Drive, Buffalo, NY 14225-1470
26339002 +Bank of America, c/o Frederick J. Hanna & Associates, 1427 Roswell Rd, Marietta, GA 30062-3668
26339003 +Bank of America, c/o ERS Solutions Inc, PO Box 9004, Renton, WA 98057-9004
26339001 Bank of America, c/o Hunt & Henriques, 151 Bernal Rd, Suite 8, San Jose, CA 95119-1306
26339004 +Beachwood Escrow, Attn.: Sally Lucero, Sr.Escrow Officer, 1509 West Magnolia Blvd., Burbank, CA 91506-1835
26339005 Daily New Los Angeles, 211221 Oxnard St., Woodland Hills, CA 91365
26338990 +Debtor, Art Hovsepian, 400 N. Glenoaks Blvd., Burbank, CA 91502-1120
26338991 +Debtor's Attorney, Glenn Ward Calsada, Esq., 9924 Reseda Boulevard, Northridge, CA 91324-1509
26339006 +Express Pipe & Supply, c/o William D. Locher, Esq., 1880 Century Park East, 12th Fl., Los Angeles, CA 90067-1600
26339007 +Glendale Adventist Med Center, 1509 Wilson Terrace, Glendale, CA 91206-4098
26339008 +Guy Lopez, 4814 N. McCord Rd, Sylvania, OH 43560-3129
26339009 +Hungerford and E.M. Scala, PO Box 1701, Simi Valley, CA 93062-1701
26339010 +JP Morgan Chase, c/o Tate & Kirlin Associates, 2810 Southhampton Road, Philadelphia, PA 19154-1207
26339011 +JP Morgan Chase Bank, c/o National Action Financial Services,, 165 Lawrence Bell Dr., Suite 100, Williamsville, NY 14221-7900
26520242 +KEYBANK, C/O WELTMAN, WEINBERG & REIS, 323 W. LAKESIDE AVE., 2ND FL, CLEVELAND, OH 44113-1085
26339012 +Kalachi Enterprises Inc., c/o Beachwood Escrow, 1509 West Magnolia Blvd., Burbank, CA 91506-1835
26339014 +Keybank National Association, c/o Winn Law Group, 110 E. Wilshire Ave., Suite 212, Fullerton, CA 92832-1960
26339015 +Los Angeles County Tax Collector, PO Box 54017, Los Angeles, CA 90054-0017
26750453 Los Angeles County Treasurer and Tax Collector, PO Box 54110, Los Angeles, CA 90054-0110
26339017 +Los Angeles Times, 1210 N. Azusa Canyon Rd., West Covina, CA 91790-1003
26339018 +Los Angeles Times, c/o Biehl&Biehl Inc, 325 E. Fullerton Ave., Carol Stream, IL 60188-1865
27142204 +M.S. Hungerford and E.M. Scala, Trustees, of the Nipotini Trust, c/o Leon L. Vickman, a Law Corporation, 4646 White Oak Avenue, Encino, CA 91316-3831
27142276 +M.S. Hungerford and E.M. Scala, Trustees, c/o Leon L. Vickman, A Law Corporation, 4646 White Oak Avenue, Encino, CA 91316-3831
26339019 +Shankar Lakshman, M.D., 1044 South Fair Oaks Ave., Suite 101, Pasadena, CA 91105-2622
26339013 +Stella Kalachi, c/o Beachwood Escrow, 1509 West Magnolia Blvd., Burbank, CA 91506-1835
26338992 +U.S. Trustee (LA), 725 S. Figueroa St., #2600, Los Angeles, CA 90017-5413
27089810 eCAST Settlement Corporation, POB 29262, New York, NY 10087-9262

The following entities were noticed by electronic transmission on Sep 11, 2010.

tr +EDI: QRGONZALEZ.COM Sep 10 2010 23:03:00 Rosendo Gonzalez (TR), Gonzalez & Associates, 530 S. Hewitt Street, Suite 148, Los Angeles, CA 90013-1906
smg EDI: CALTAX.COM Sep 10 2010 23:03:00 Franchise Tax Board, ATTN: Bankruptcy, P.O. Box 2952, Sacramento, CA 95812-2952
cr EDI: HNDA.COM Sep 10 2010 23:03:00 AMERICAN HONDA FINANCE CORPORATION, 3625 W. Royal Lane, Suite 200, Irving, TX 75063
26338994 EDI: HNDA.COM Sep 10 2010 23:03:00 American Honda Finance, PO Box 60001, City of Industry, CA 91716
26805882 +EDI: BANKAMER.COM Sep 10 2010 22:58:00 Bank of America, N.A., P. O. Box 26012, NC4-105-03-14, Greensboro, NC 27420-6012
26668415 +EDI: BANKAMER.COM Sep 10 2010 22:58:00 Fia Card Services, NA As Successor In Interest to, Bank of America NA and Mbna America Bank, 1000 Samoset Drive, DE5-023-03-03, Newark, DE 19713-6000
26339020 EDI: TFSR.COM Sep 10 2010 22:58:00 Toyota Financial Services, PO Box 60114, City of Industry, CA 91716
26509145 +EDI: TFSR.COM Sep 10 2010 22:58:00 Toyota Motor Credit Corporation, 3200 West Ray Road, Chandler, AZ 85226-2450

TOTAL: 8

***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****

cr Anahid Hovsepian

District/off: 0973-2 User: LynnlC Page 2 of 2 Date Rcvd: Sep 10, 2010
Case: 10-27883 Form ID: ntcpdiv Total Noticed: 49

26520243* +KEYBANK, C/O WELTMAN, WEINBERG & REIS, 323 W. LAKESIDE AVE., 2ND FL, CLEVELAND, OH 44113-1085
26339016* +Los Angeles County Tax Collector, PO Box 54017, Los Angeles, CA 90054-0017

TOTALS: 1, * 2, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Sep 12, 2010** **Signature:** Joseph Speetjens

# EXHIBIT “3”

B10 (Official Form 10) (04/10) - Page 1

**UNITED STATES BANKRUPTCY COURT** CENTRAL DISTRICT OF CALIFORNIA

**PROOF OF CLAIM**

Name of Debtor: Art Hovsepian

Case Number: 2:10-bk-27883-VK

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Alek Hovsepian

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Daren M. Schlecter, Esq. (SBN 259537)
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone number: 310-553-5747

**Court Claim Number:** ____________ *(If known)*

Filed on: ____________

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 400,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Recorded Lease (Exhibit "A" attached")
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** ____________

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property:$** 1,100,000.00 **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** ____________ **Basis for perfection:** ____________

**Amount of Secured Claim: $** 400,000.00 **Amount Unsecured: $** ____________

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5)

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$____________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: 1/15/2011

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

DAREN SCHLECTER
ATTORNEY FOR ALEK HOVSEPIAN

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### ITEMS TO BE COMPLETED IN PROOF OF CLAIM FORM

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

1. **Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

2. **Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of heath care goods or services limite the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

3. **Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

4. **Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

5. **Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).** If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

6. **Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

7. **Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the fact value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# EXHIBIT "A"

**This page is part of your document - DO NOT DISCARD**

# 20100543208

**Pages: 0017**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

04/21/10 AT 02:12PM

| | |
|---|---|
| FEES: | 63.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 63.00 |

LEADSHEET

201004211890025

00002252599

002645992

SEQ:
01

DAR - Counter (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E503741

RECORDING REQUEST BY

WHEN RECORDED MAIL TO

NAME Art Hovsepian

MAILING ADDRESS 400 N. Glenoaks Blvd

CITY, STATE ZIP CODE Burbank CA 91502

04/21/2010

*20100543208*

2

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# TITLE(S)

Lease

R428 6/94

16

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles

On Apr. 21, 2010, before me, Rod Elyson, Notary Public, personally appeared

Art Horsepian and Alek Horsepian,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature]

ROD ELYSON
COMM. #1812417
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Sep. 7, 2012

## OPTIONAL

The description below is not required by law but may be valuable to persons relying on the attached document and could prevent fraudulent use of this form.

Title or Description of Attached Document:

(NO TITLE)

Document Date: ——

Number of Pages: 13

17

4/29/04

# EXHIBIT "A"

4

Parcel 1:

The Southeasterly 82.5 feet of the Southwesterly 70 feet of the Southeasterly 152.5 feet of Lot 17 in Block 36, Town of Burbank, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 17 Page 19 et seq., of Miscellaneous Records, in the office of the County Recorder of said county.

Except therefrom that portion of said land described in the deed to the City of Burbank recorded on May 21, 1948 as Instrument No. 783 in Book 27256 Page 202, Official Records, of said County and being described as follows:

Beginning at the most Southerly corner of said Lot 17; thence Northwesterly along the Southwesterly line of said Lot, a distance of 82.5 feet to the most Westerly corner of said Southeasterly 82.5 feet of the Southwesterly 70 feet of the Southeasterly 152.50 feet of said Lot 17; thence Northeasterly along the Northwesterly line of said last described parcel, a distance of 20 feet to a line parallel with and distant Northeasterly 50 feet, measured at right angles, from the center line of 4th Street, now Glenoaks Boulevard, shown as 60 feet wide on said Map of Town of Burbank; thence Southeasterly along said parallel line, 75.50 feet; more or less, to the beginning of a tangent curve concave Northerly, having a radius of 7 feet; thence Easterly along said curve, 10.99 feet, more or less, to its point of tangency with the Southeasterly line of said Lot 17; thence Southwesterly along said Southeasterly line 27 feet, more or less, to the point of beginning

Parcel 2:

The Southeasterly 82.5 feet of the Northeasterly 48 feet of the Southeasterly 152.5 feet of Lot 17 in Block 36 of the Town of Burbank, in the City of Burbank, County of Los Angeles, State of California, as per map recorded in Book 17 Page 19 et seq. of Miscellaneous Records, in the office of the County Recorder of said county.

Parcel 3:

An easement for utilities and access to alley over the Northeasterly 10 feet of the Northwesterly 70 feet of said Southeasterly 152.5 feet of said Lot 17.

Assessor's Parcel No: 2455-036-018-017

04 1052092

1. PARTIES. This Lease, dated as of this 15 th day of December, 2006, is made by and between Art Housepian (herein called "Lessor") and Alek Housepian (herein called "Tenant").

2. PREMISES. Lessor does hereby lease to Tenant and Tenant hereby leases from Lessor that certain space (herein called "Premises"), having dimensions of approximately ______ feet in frontage by ______ feet in depth and containing approximately 1280 A.H. square feet of floor area. Prox. Twelve hundre Eighty S.F. The location and dimensions of said Premises are delineated on Exhibit "A" attached hereto and incorporated by reference herein. Said Premises are located in the City of Burbank, County of Los Angels, State of California.

This Lease is subject to the terms, covenants and conditions herein set forth and the Tenant covenants as a material part of the consideration for this Lease to keep and perform each and all of said terms, covenants and conditions by it to be kept and performed. (Retail store)

3. USE. Tenant shall use the Premises for Retail store Located at 400 N. Glenoaks Blvd Burbank CA 91502 and shall not use or permit the Premises to be used for any other purpose without the prior written consent of Lessor.

4. MINIMUM RENT.

4.A. Tenant agrees to pay to Lessor as Minimum Rent, without notice or demand, the monthly sum of Eighteen hundred dollars / $1800 Fixed for the First 10 years Dollars, in advance, on or before the first day of each and every successive calendar month during the term hereof, except the first month's rent shall be paid upon the execution hereof. The rental shall commence:

[X] On the 15 day of December, 2006, if the premises are being leased in its "as is" condition or subject to such incidental work as is to be performed by Lessor prior to said date (this work, if any, to be set forth in the attached Exhibit B and in this letter event, the rental shall commence on said date only if Lessor shall have completed said work).

A.H.

BEACHWOOD ESCROW
This is a certified true copy of the original document

Rent for any period which is for less than one (1) month shall be a prorated portion of the monthly installment herein based upon a thirty (30) day month. Said rental shall be paid to Lessor without deduction or offset, in lawful money of the United States of America and at such place as Lessor may from time to time designate in writing.

N/A 4.B. THE MINIMUM RENTAL as set forth in 4(A) above shall be increased if the Consumer Price Index--Los Angeles, Long Beach, Anaheim, California--All Urban Consumers (Index) as published by the United States Department of Labor's Bureau of Labor Statistics, increases over the base period Index. The base period Index shall be the Index for the calendar month which is four months prior to the month in which rentals commence. The base period Index shall be compared with the Index for the same calendar month for each subsequent year (comparison month). If the Index for any comparison month is higher than the base period Index, then the minimum rental for the next year shall be increased by the identical percentage commencing with the next rental commencement month. In no event shall the Minimum Rental be less than that set forth in 4(A) above. (By way of illustration only, if Tenant commenced paying rent in June of 1977, then the base period Index is that for February 1977 (assume 176.3) and that Index shall be compared to the Index for February 1978 (assume 185.8) and because the Index for February 1978 is 5.39% higher, the minimum rental commencing June, 1978, shall be 5.39% higher; likewise the Index for February 1979 shall be compared with the index for February 1977).

Should the Bureau discontinue the publication of the above Index, or publish same less frequently, or alter same in some other manner, then lessor shall adopt a substitute index or substitute procedure which reasonably reflects and monitors consumer prices.

5. TERM. The lease term shall start on the 15th day of December, 2006 and shall end on the 14th day of December, 2016 (2016) A.H. The parties hereto acknowledge that certain obligations under various articles hereof may commence prior to the lease term, i.e., construction, hold harmless, liability insurance, etc.; and the parties agree to be bound by these articles prior to commencement of the lease term.

6. SECURITY DEPOSIT. Concurrently with Tenant's execution of this Lease, Tenant has deposited with Lessor $ 0 ______________. Said sum shall be held by Lessor as security for the faithful performance by Tenant of all the terms, covenants, and conditions of this Lease to be kept and performed by Tenant during the term hereof. If Tenant defaults with respect to any provision of this Lease, including, but not limited to the provisions relating to the payment of rent, Lessor may (but shall not be required to) use, apply or retain all or any part of this security deposit for the payment of any rent or any other sum in default, or for the payment of any amount which Lessor may spend or become obligated to spend by reason of Tenant's default, or to compensate Lessor for any other loss or damage which Lessor may suffer by reason of Tenant's default. If any portion of said deposit is so used or applied Tenant shall, within five (5) days after written demand therefor, deposit cash with Lessor in an amount sufficient to restore the security deposit to its original amount and Tenant's failure to do so shall be a default under this Lease. Lessor shall not be required to keep this security deposit separate from its general funds, and Tenant shall not be entitled to interest on such deposit. If Tenant shall fully and faithfully perform every provision of this Lease to be performed by it, the security deposit or any balance thereof shall be returned to Tenant (or, at Lessor's option, to the last assignee of Tenant's interest hereunder) within ten (10) days following expiration of the Lease term. In the event of termination of Lessor's interest in this Lease, Lessor shall transfer said deposit to Lessor's successor in interest.

A.H.

ESCROW This is a certified true copy of the original document by

7.B. Adjustments.

I. In addition to the Minimum Rent provided in Article 4 hereinabove, and commencing at the same time as any rental commences under this Lease Tenant shall pay to Lessor the following items, herein called Adjustments:

(a) All real estate taxes and insurance premiums on the Premises, including land, building, and improvements thereon. Said real estate taxes shall include all real estate taxes and assessments that are levied upon and/or assessed against the Premises, including any taxes which may be levied on rents. Said insurance shall include all insurance premiums for fire, extended coverage, liability, and any other insurance that Lessor deems necessary on the Premises. Said taxes and insurance premiums for purpose of this provision shall be reasonably apportioned in accordance with the total floor area of the Premises as it relates to the total floor area of the Shopping Center which is from time to time completed as of the first day of each calendar quarter, (provided, however, that if any tenants in said building or buildings pay taxes directly to any taxing authority or carry their own insurance, as may be provided in their leases, their square footage shall not be deemed a part of the floor area).

(b) That percent of the total cost of the following items as Tenant's total floor area bears to the total floor area of the Shopping Center which is from time to time completed as of the first day of each calendar quarter.

(i) All real estate taxes, inclduing assessments, all insurance costs, and all costs to maintain, repair, and replace common areas, parking lots, sidewalks, driveways, and other areas used in common by the tenants of the Shopping Center.

(ii) All costs to supervise and administer said common areas, parking lots, sidewalks, driveways, and other areas used in common by the tenants or occupants of the Shopping Center. Said costs shall include such fees as may be paid to a thrid party in connection with same and shall in any event include a fee to Lessor to supervise and administer same in an amount equal to ten (10%) percent of the total costs of (i) above.

(iii) Any parking charges, utilities surcharges, or any other costs levied, assessed or imposed by, or at the direction of, or resulting from statutes or regulations, or interpretations thereof, promulgated by any governmental authority in connection with the use or occupancy of the premises or the parking facilities serving the premises.

II. Upon commencement of rental Lessor shall submit to Tenant a statement of the anticipated monthly Adjustments for the period between such commencement and the following January and Tenant shall pay these Adjustments on a monthly basis concurrently with the payment of the Rent, Tenant shall continue to make said monthly payments until notified by Lessor of a change thereof. By March 1 of each year Lessor shall endeavor to give Tenant a statement showing the total Adjustments for the Shopping Center for the prior calendar year and Tenant's allocable share thereof, prorated from the commencement of rental. In the event the total of the monthly payments which Tenant has made for the prior calendar year be less than the Tenant's actual share of such Adjustments then Tenant shall pay the difference in a lump sum within ten (10) days after receipt of such statement from Lessor and shall concurrently pay the difference in monthly payments made in the then calendar year and the amount of monthly payments which are then calculated as monthly Adjustments based on the prior year's experience. Any over-payment by Tenant shall be credited towards the monthly Adjustments next coming due. The actual Adjustments for the prior year shall be used for purposes of calculating the anticipated monthly ADjustments for the then current year with actual determination of such ADjustments after each calendar year as above provided; excepting that in any year in which resurfacing is contemplated Lessor shall be permitted to include the anticipated cost of same as part of the estimated

A. H.

monthly Adjustments. Even though the term has expired and Tenant has vacated the premises, when the final determination is made of Tenant's share of said Adjustments for the year in which this Lease terminates, Tenant shall immediately pay any increase due over the estimated Adjustments previously paid and, conversely, any overpayment made shall be immediately rebated by Lessor to Tenant. Failure of Lessor to submit statements as called for herein shall not be deemed to be a waiver of Tenant's requirement to pay sums as herein provided.

8. USES PROHIBITED. Tenant shall not do or permit anything to be done in or about the Premises nor bring or keep anything therein which is not within the permitted use of the premises which will in any way increase the existing rate of or affect any fire or other insurance upon the Building or any of its contents, or cause a cancellation of any insurance policy covering said Building or any part thereof or any of its contents. Tenant shall not do or permit anything to be done in or about the Premises which will in any way obstruct or interfere with the rights of other tenants or occupants of the Building or injure or annoy them or use or allow the Premises to be used for any improper, immoral, unlawful or objectionable purpose; nor shall Tenant cause, maintain or permit any nuisance in, on or about the Premises. Tenant shall not commit or allow to be committed any waste in or upon the Premises.

9. COMPLIANCE WITH LAW. Tenant shall not use the Premises, or permit anything to be done in or about the Premises, which will in any way conflict with any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated. Tenant shall at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force and with the requirements of any board of fire underwriters or other similar bodies now or hereafter constituted relating to or affecting the condition, use or occupancy of the Premises, excluding structural changes not related to or affected by Tenant's improvements or acts. The judgment of any court of competent jurisdiction or the admission of Tenant in any action against Tenant, whether Lessor be a party thereto or not, that Tenant has violated any law, statute, ordinance or governmental rule, regulation or requirement, shall be conclusive of that fact as between the Lessor and Tenant.

10. ALTERATIONS AND ADDITIONS. Tenant shall not make or allow to be made any alterations, additions or improvements to or of the premises or any part thereof without first obtaining the written consent of Lessor and any alterations, additions or improvements to or of said Premises, including, but not limited to, wall covering, paneling and built-in cabinet work, but excepting movable furniture and trade fixtures, shall at once become a part of the realty and belong to the Lessor and shall be surrendered with the Premises. In the event Lessor consents to the making of any alterations, additions or improvements to the Premises by Tenant, the same shall be made by Tenant at Tenant's sole cost and expenses. Upon the expiration or sooner termination of the term hereof, Tenant shall, upon written demand by Lessor, given at least thirty (30) days prior to the end of the term, at Tenant's sole cost and expense, forthwith and with all due diligence, remove any alterations, additions, or improvements made by Tenant, designated by Lessor to be removed, and Tenant shall, forthwith and with all due diligence, at its sole cost and expense, repair any damage to the Premises caused by such removal.

11. REPAIRS.

BEACHWOOD ESCROW
This is a certified true copy of the original document

11.A. By entry hereunder, Tenant shall be deemed to have accepted the Premises as being in good, sanitary order, condition and repair. Tenant shall, at Tenant's sole cost and expense, keep the Premises and every part thereof in good condition and repair (except as hereinafter provided with respect to Lessor's obligations) including without limitation, the maintenance, replacement and repair of any storefront, doors window casements, glazing, plumbing, pipes, electrical wiring, and conduits, heating and air conditioning system (when there is an air conditioning system). Tenant shall obtain a service contract for repairs

A.H.

and maintainence of said system, said maintenance contract to conform to the requirements under the warranty, if any, on said system. Tenant shall, upon the expiration or sooner termination of this Lease hereof, surrender the Premises to the Lessor in good condition, broom clean, ordinary wear and tear and damage from causes beyond the reasonable control of Tenant excepted. Any damage to adjacent premises caused by Tenant's use of the Premises shall be repaired at the sole cost and expense of Tenant.

11.B. Notwithstanding the provisions of Article 11.A. hereinabove, Lessor shall repair and maintain the structural portions of the Building, including the exterior walls and roof, unless such maintenance and repairs are caused in part or in whole by the act, neglect, fault or omission of any duty by the Tenant, its agents, servants, employees, invitees, or any damage caused by breaking and entering, in which case Tenant shall pay to Lessor the actual cost of such maintenance and repairs. Lessor shall not be liable for any failure to make such repairs or to perform any maintainence unless such a failure shall persist for an unreasonable time after written notice of the need of such repairs or maintenance is given to Lessor by Tenant. Except as provided in Article 25 hereof, there shall be no abatement of rent and no liability of Lessor by reason of any injury to or interference with Tenant's business arising from the making of any repairs, alterations or improvements in or to any portion of the Building or the Premises or in or to fixtures, appurtenances and equipment therein. Tenant waives the right to make reapirs at Lessor's expense under any law, statute or ordinance now or hereafter in effect.

12. LIENS. Tenant shall keep the Premises and the property in which the Premises are situated free from any liens arising out of any work performed, materials furnished or obligations incurred by or on behalf of tenant. Lessor may require, at Lessor's sole option, that Tenant shall provide to Lessor at Tenant's sole cost and expense, a lien and completion bond in an amount equal to one and one-half (1-1/2) times the estimated cost of any improvement, additions, or alterations in the Premises which the Tenant desires to make, to insure Lessor against any liability for mechanics' and materialmen's liens and to insure completion of the work.

13. ASSIGNMENT AND SUBLETTING. Tenant shall not either voluntarily, or by operation of law, assign, transfer, mortgage, pledge, hypothecate or encumber this Lease or any interest therein, and shall not sublet the said Premises or any part thereof or any right or privilege appurtenant thereto, or allow any other person (the employees, agents, servants and invitees of Tenant excepted) to occupy or use the said Premises, or any portion thereof, without first obtaining the written consent of Lessor, which consent shall not be unreasonably withheld. A consent to one assignment, subletting, occupation or use by any other person shall not be deemed to be a consent to any subsequent assignment, subletting, occupation or use by another person. Consent to any such assignment or subletting shall in no way relieve Tenant of any liability under this Lease. Any such assignment or subletting without such consent shall be void, and shall, at the option of the Lessor, constitute a default under the terms of this Lease.

In the event that Lessor shall consent to a sublease or assignment hereunder, Tenant shall pay Lessor reasonable fees, not to exceed Six Hundred and no/100ths ($600.00) Dollars, incurred inconnection with the processing of documents necessary to giving of such consent.

14. HOLD HARMLESS. Tenant shall indemnify and hold harmless Lessor against and from any and all claims arising from Tenant's use of the Premises or from the conduct of its business or from any activity, work, or other things done, permitted or suffered by the Tenant in or about the Premises and shall furher indemnify and hold harmless Lessor against and from any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any act or negligence of the Tenant, or any officer, agent, employee, guest, or invitee of Tenant,

A.H.

and from all costs, attorney's fees, and liabilities incurred in or about the defense of any such claim or any action or proceeding brought thereon and in case any action or proceeding be brought against Lessor by reason of such claim, Tenant upon notice from Lessor shall defend the same at Tenant's expense by counsel reasonably satisfactory to Lessor, Tenant, as a material part of the consideration to Lessor, hereby assumes all risk of damage to property or injury to persons in, upon or aout the Premises, from any cause other than Lessor's negligence; and Tenant hereby waives all claims in respect thereof against Lessor. Tenant shall give prompt notice to Lessor in case of casualty or accidents in the Premises.

Lessor or its agents shall not be liable for any loss or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the Building or from the pipes, appliances or plumbing works therein or from the roof, street or subsurface or from any other place resulting from dampness or any other cause whatsoever, unless caused by or due to the negligence of Lessor, its agents, servants or employees. Lessor or its agents shall not be liable for interference with the light, air, or for any latent defect in the Premises.

15. SUBROGATION. As long as their respective insurers so permit, Lessor and Tenant hereby mutually waive their respective rights of recovery against each other for any loss insured by fire, extended coverage and other property insurance policies existing fro the benefit of the respective parties. Each party shall apply to their insurers to obtain said waivers. Each party shall obtain any special endorsements, if required by their insurer to evidence compliance with the aforementioned waiver.

16. LIABILITY INSURANCE. Tenant shall, at Tenant's expense, obtain and keep in force during the term of this Lease a policy of comprehensive public liability insurance insuring Lessor and Tenant against any liability arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be in the amount of not less than $300,000.00 for injury or death of one person in any one accident or occurrence and in the amount of not less than $500,000.00 for injury or death of more than one person in any one accident or occurrence. Such insurance shall further insure Lessor and Tenant against liability for property damage of at least $50,000.00. The limit of any such insurance shall not, however, limit the liability of the Tenant hereunder. Tenant may provide this insurance under a blanket policy, provided that said insurance shall have a Lessor's protective liability endorsement attached thereto. If Tenant shall fail to procure and maintain said insurance, Lessor may, but shall not be required to, procure and maintain same, but at the expense of Tenant. Insurance required hereunder shall be in companies rated A:XII or better in "Best's Key Rating Guide". Tenant shall deliver to Lessor, prior to right of entry, copies of policies of liability insurance required herein or certificates evidencing the existence and amounts of such insurance with loss payable clauses satisfactory to Lessor. No policy shall be cancellable or subject to reduction of coverage. All such policies shall be written as primary policies not contributing with and not in excess of coverage which Lessor may carry.

17. UTILITIES. Tenant shall pay for all water, gas, heat, light, power, sewer charges, telephone service and all other services and utilities supplied to the Premises, together with any taxes thereon. If any such services are not separately metered to Tenant, Tenant shall pay a reasonable proportion to be determined by Lessor of all charges jointly metered with other premises.

18. PERSONAL PROPERTY TAXES. Tenant shall pay, or cause to be paid, before delinquency any and all taxes levied or assessed and which become payable during the term hereof upon all Tenant's leasehold improvements, equipment, furniture, fixtures, and any other personal property located in the Premises. In the event any or all of the Tenant's leasehold, improvements, equipment, furniture, fixtures and other personal property

BEACHWOOD ESCROW
by

A.H.

shall be assessed and taxed with the real property, Tenant shall pay to Lessor its share of such taxes within ten (10) days after delivery to Tenant by Lessor of a statement in writing setting forth the amount of such taxes applicable to Tenant's property.

19. RULES AND REGULATIONS. Tenant shall faithfully observe and comply with the rules and regulations that Lessor shall from time to time promulgate and/or modify. The rules and regulations shall be binding upon the Tenant upon delivery of a copy of them to Tenant. Lessor shall not be responsible to Tenant for the nonperformance of any said rules and regulations by any other tenants or occupants.

20. HOLDING OVER. If Tenant remains in possession of the Premises or any part thereof after the expiration of the term hereof with the express written consent of Lessor, such occupancy shall be a tenancy from month to month at a rental in the amount of the last Monthly Minimum Rent, plus all other charges payable hereunder, and upon all the terms hereof applicable to a month to month tenancy.

21. ENTRY BY LESSOR. Lessor reserves, and shall at any and all times have, the right to enter the Premises to inspect the same, to submit said Premises to prospective purchasers or tenants, to post notices of non-responsibility, to repair the Premises and any portion of the Building of of which the Premises are a part that Lessor may deem necessary or desirable, without abatement of rent, and may for that purpose erect scaffolding and other necessary structures where reasonably required by the character of the work to be performed, always providing that the entrance to the Premises shall not be unreasonably blocked thereby, and further providing that the business of the Tenant shall not be interfered with unreasonably. Tenant hereby waives any claim for damages or for any injury or inconvenience to or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Premises, and any other loss occasioned thereby. For each of the aforesaid purposes, Lessor shall at all times have and retain a key with which to unlock all of the doors in, upon and about the Premises, excluding Tenant's vaults, safes and files, and Lessor shall have the right to use any and all means which Lessor may deem proper to open said doors in an emergency, in order to obtain entry to the Premises without liability to Tenant except for any failure to exercise due care for Tenant's property and any entry to the Premises obtained by Lessor by an said means, or otherwise, shall not under any circumstances by construed or deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an eviction of Tenant from the Premises or any portion thereof.

22. TENANT'S DEFAULT. The occurrence of any one or more of the following events shall constitute a defult and breach of this Lease by Tenant.

22.A. The vacating or abandonment of the Premises by Tenant.

22.B. The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of three (3) days after written notice thereof by Lessor to Tenant.

22.C. The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by the Tenant, other than described in Article 22.B., above, where such failure shall continue for a period of thirty (30) days after written notice thereof by Lessor to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, the Tenant shall not be deemed to be in default if Tenant commences such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion.

22.D. The making by Tenant of any general assignment or general arrangement for the benefit of creditors; or the filing by or against Tenant of a petition to have Tenant adjudged a bankrupt, or a petition or reorganization or arrangement under any law relating to bankruptcy

This is a true copy of the original document

A. H.

(unless, in the case of a petition filed against Tenant, the same is dismissed within sixty (60) days; or the appointment of a trustee or a receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty (30) days; or the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharged within thirty (30) days.

23. REMEDIES IN DEFAULT. In the event of any such default or breach by Tenant, Lessor may at any time thereafter, in his sole discretion, with or without notice or demand and without limiting Lessor in the exercise of a right or remedy which Lessor may have by reason of such default or breach:

23.A. Terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Tenant shall immediately surrender possession of the Premises to Lessor. In such event Lessor shall be entitled to recover from Tenant all damages incurred by Lessor by reason of Tenant's default including, but not limited to, the cost of recovering possession of the Premises; expenses of reletting, including necessary renovation and alteration of the Premises; reasonable attorney's fees; the worth at the time of award by the court having jurisdiction thereof of the amount by which the unpaid rent and other charges and Adjustments called for herein for the balance of the term after the time of such award exceeds the amount of such loss for the same period that Tenant proves could be reasonably avoided; and that portion of any leasing commission paid by Lessor and applicable to the unexpired term of this Lease. Unpaid installments of rent or other sums shall bear interest from the date due at the maximum legal rate; or

23.B. Maintain Tenant's right to possession, in which case this Lease shall continue in effect whether or not Tenant shall have abandoned the Premises. In such event Lessor shall be entitled to enforce all of Lessor's rights and remedies under this Lease including the right to recover the rent and any other charges and Adjustments as may become due hereunder; or

23.C. Pursue any other remedy now or hereafter available to Lessor under the laws or judicial decisions of the State in which the Premises are located.

24. DEFAULT BY LESSOR. Lessor shall not be in default unless Lessor fails to perform obligations required of Lessor within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Lessor and to the holder of any first mortgage or deed of trust covering the Premises whose name and address shall have theretofore been furnished to Tenant in writing, specifying wherein Lessor has failed to perform such obligation; provided, however, that if the nature of Lessor's obligation is such that more than thirty (30) days are required for performance then Lessor shall not be in default if Lessor commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion. In no event shall Tenant have the right to terminate this Lease as a result of Lessor's default and Tenant's remedies shall be limited to damages and/or an injunction.

25. RECONSTRUCTION. In the event the Premises are damaged by fire or other perils covered by extended coverage insurance, Lessor agrees to forthwith repair same, and this Lease shall remain in full force and effect, except that Tenant shall be entitled to a proportionate reduction of the Minimum Rent from the date of damage and while such repairs are being made, such proportionate reduction to be based upon the extent to which the damage and making of such repairs shall reasonably interfere with the business carried on by the Tenant in the Premises. ~~If the damage is due to the fault or neglect of Tenant or its employees, there shall be no abatement of rent.~~

A.H

This is a certified copy of the original document

In the event the Premises are damaged as a result of any cause other than the perils covered by fire and extended coverage insurance then Lessor shall forthwith repair the same, provided the extent of the destruction be less than ten (10%) percent of the then full replacement cost of the Premises. In the event the destruction of the Premises is to an extent of ten (10%) percent or more of the full replacement cost then Lessor shall have the option: (1) to repair or restore such damage, this Lease continuing in full force and effect, but the Minimum Rent to be proportionately reduced as hereinabove in this Article provided; or (2) give notice to Tenant at any time within sixty (60) days after such damage, terminating this Lease as of the date specified in such notice, which date shall be no more than thirty (30) days after the giving of such notice. In the event of giving such notice, this Lease shall expire and all interest of the Tenant in the Premises shall terminate on the date so specified in such notice and the Minimum Rent, reduced by a proportionate reduction, based upon the extent, if any, to which such damage interfered with the business carried on by the Tenant in the Premises, shall be paid up to date of said such termination.

Notwithstanding anything to the contrary contained in this Article, Lessor shall not have any obligation whatsoever to repair, reconstruct or restore the Premises when the damage resulting from any casualty covered under this Article occurs during the last twenty-four months of the term of this Lease or any extension thereof.

Lessor shall not be required to repair any injury or damage by fire or other cause, or to make any repairs or replacements of any leasehold improvements, fixtures, or other personal property of Tenant.

26. EMINENT DOMAIN. If more than twenty-five (25%) percent of the Premises shall be taken or appropriated by any public or quasi-public authority under the power of eminent domain, either party hereto shall have the right, at its option, within sixty (60) days after said taking, to terminate this Lease upon thirty (30) days written notice. If either less than or more than 25% of the Premises are taken (and neither party elects to terminate as herein provided), the Minimum Rent thereafter to be paid shall be equitably reduced. If any part of the Shopping Center other than the Premises may be so taken or appropriated, Lessor shall within sixty (60) days of said taking have the right at its option to terminate this Lease upon written notice to Tenant. In the event of any taking or appropristion whatsoever, Lessor shall be entitled to any and all awards and/or settlements which may be given and Tenant shall have no claim against Lessor for the value of any unexpired term of this Lease.

27. PARKING AND COMMON AREAS. Lessor covenants that upon completion of the Shopping Center an area approximately equal to the common and parking areas as shown on the attached Exhibit "A" shall be at all times available for the non-exclusive use of Tenant during the full term of this Lease or any extension of the term hereof provided that the condemnation or other taking by any public authority, or sale in lieu of condemnation, of any or all of such common and parking areas shall not constitute a violation of this covenant. Lessor reserves the right to change the entrances, exists, traffic lanes and the boundaries and locations of such parking area or areas, provided, however, that anything to the contrary notwithstanding contained in this Article 27, said parking area or areas shall at all times be substantially equal or equivalent to that shown on the attached Exhibit "A". Lessee has exclusive right of 4 assigned parking spaces only

27.A. Prior to the date of Tenant's opening for business in the Premises, Lessor shall cause said common and parking area or areas to be graded, surfaced, marked and landscaped at no expense to Tenant.

27.B. The Lessor shall keep said automobile parking and common areas in a neat, clean and orderly condition and shall repair any damage to the facilities thereof, but all expenses in connection with said automobile parking and common areas shall be charged and prorated in the manner as set forth in Article 7 hereof.

by A.H.

27.C. TEnant, for the use and benefit of Tenant, its agents employees, customers, Licensees and sub-tenants, shall have the non-exclusive right in common with Lessor, and other present and future owners, tenants and their agents, employees, customers, licenseees and sub-tenants, to use said common and parking areas during the entire term of this Lease, or any extension thereof, for ingress and egress, and automobile parking.

27.D. The Tenant, in the use of said common and parking areas, agress to comply with such reasonable rules, regulations and charges for parking as the Lessor may adopt from time to time for the orderly and proper operation of said common and parking areas. Such rules may include but shall not be limited to the following: (1) The restricting of employee parking to a limited, designated area or areas; and (2) The regulation of the removal, storage and disposal of Tenant's refuse and other rubbish at the sole cost adn expense of Tenant.

28. SIGNS. The Tenant may affix and maintain upon the glass panes and supports of the show windows and within twelve (12) inches of any window and upon the exterior walls of the Premises only such signs, advertising placards, names, insignia, trademarks and descriptive material as shall have first received the written approval of the Lessor as to type, size, color, location, copy nature and display qualities. Anything to the contrary in this Lease notwithstanding, Tenant shall not affix any sign to the roof. Tenant shall, however, erect one sign on the front of th Premises not later than the date Tenant opens for business, in accordance with a design to be prepared by Tenant and approved in writing by Lessor.

29. DISPLAYS. The Tenant may not display or sell merchandise or allow grocery carts or other similar devices within the control of Tenant to be stored or to remain outside the defined exterior walls and permanent doorways of the Premises. Tenant further agrees not to install any exterior lighting, amplifiers or similar dvices or use in or about the Premises any advertising medium which may be heard or seen outside the Premises, such as flashing lights, searchlights, loudspeakers, phonographs or radio braodcasts.

30. AUCTIONS. Tenant shall not conduct or permit to be conducted any sale by auction in, upon or from the Premises whether said auction be voluntary, involuntary, pursuant to any assignment for the payment of creditors or pursuant to any bankruptcy or other insolvency proceeding.

31. HOURS OF BUSINESS. Subject to the provisions of ARticle 25 hereof, Tenant shall continously during the entire term hereof conduct and carry on Tenant's business in the Premises and shall keep the Premises open for business and cause Tenant's business to be conducted therein during the usual business hours of each and every business day as is customary for businesses of like character in the city in which the Premises are located to be open for business, provided, however, that this provision shall not apply if the Premises should be closed and the business of Tenant temporarily discontinued therein on account of strikes, lockouts or similar causes beyond the reasonable control of Tenant. Tenant shall keep the Premises adequately stocked with merchandise, and with sufficient sales personnel to care for the partronage, and to conduct said business in accordance with sound business practice.

In the event of breach by the Tenant of any of the conditions contained in this Article, the Lessor shall have, in addition to any and all remedies herein provided, the right at its option to collect not only the Minimum Rent herein provided, but additional rent at the rate of one-thirtieth (1/30) of the Minimum Rent herein provided for each and every day that the Tenant shall fail to conduct its business as herein provided; said additional rent shall be deemed to be in lieu of any percentage rent that might have been earned during such period of the Tenant's failure to conduct its business as herein provided.

This is a certified true copy of the original document. by

32. MERCHANTS' ASSOCIATION. If a mojority of tenants in the Shopping Center shall determine that it is in the best interests of the Shopping Center, Tenant will become a member of, and participate fully in, and remain in good standing in the Merchants' Association (as soon as the same has been formed), organized for tenants occupying premises in the Shopping Center, and Tenant will abide by the regulations of such Association. Each member tenant shall have one (1) vote, and the Lessor shall also have one (1) vote, in the operation of said Association. The objects of such Association shall be to encourage its members to deal fairly and courteously with their customers, to encourage ethical business practices, and to assist the business of the tenants by sales promotion and centerwide advertising. The Tenant agrees to pay minimum dues to the Merchants' Association, provided however, that in no event shall the dues paid by Tenant in any fiscal year of said Association be in excess of twenty (20¢) cents per square foot of Premises leased to Tenant. Default in payment of dues shall be treated in similar manner to default in rent with like rights of Lessor at its option to the collection thereof on behalf of the Merchants' Association.

33. GENERAL PROVISIONS.

(i) Plats and Riders. Clauses, plats, riders and addendums, if any, affixed to this Lease are a part thereof.

(ii) Waiver. The waiver by Lessor of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by Lessor shall not be deemed to be a waiver of any preceding default by Tenant of any term, covenant or condition of this Lease, other than the failure of the Tenant to pay the particular rental so accepted, regardless of Lessor's knowledge of such preceding default at the time of the acceptance of such rent.

(iii) Joint Obligation. If there be more than one Tenant the obligations hereunder imposed shall be joint and several.

(iv) Marginal Headings. The marginal headings and article titles to the articles of this Lease are not a part of the Lease and shall have no effect upon the construction or interpretation of any part hereof.

(v) Time. Time is of the essence of this Lease and each and all of its provisions in which performance is a factor.

(vi) Successors and Assigns. The covenants and conditions herein contained, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

(vii) Recordation. Neither Lessor nor Tenant shall record this Lease, but a short form memorandum hereof my be recorded at the request of Lessor.

(viii) Quiet Possession. Upon Tenant paying the rent reserved hereunder and observing and performing all of the covenants, conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession of the Premises for the entire term hereof, subject to all the provisions of this Lease.

(ix) Late Charges. Tenant hereby acknowledges that late payment by TEnant to Lessor of rent or other sums due hereunder will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon Lessor by terms of any mortgage or trust deed covering the Premises. Accordingly, if any installment of rent or any sum due from Tenant shall not be received by Lessor or Lessor's designee within ten (10) days after written notice that said amount is past due, then Tenant shall pay to Lessor a late charge equal to the maximum amount permitted by Law (and in the absence of any governing law, ten percent of such overdue amount), plus any attorneys' fees incurred by Lessor by reason of Tenant's failure to pay rent and/or other charges when due hereunder. The parties hereby agree that such late charges represent a fair and reasonable estimate of the cost that Lessor will incur by reason of the late payment by Tenant. Acceptance of such late charges

Escrow copy of original document
by

A.H.

by the Lessor shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Lessor from exercising any of the other rights and remedies granted hereunder.

(x) Prior Agreements. This Lease continas all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreements or understanding pertaining to any such matters shall be effective for any purpose. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest. This Lease shall not be effective or binding on any party until fully executed by both parties hereto.

(xi) Inability to Perform. This Lease and the obligations of the Tenant hereunder shall not be affected or impaired because the Lessor is unable to fulfill any of its obligations hereunder or is delayed in doing so, if such inability or delay is caused by reason of strike, labor troubles, acts of God, or any other cause beyond the reasonable control of the Lessor.

(xii) Partial Invalidity. Any provision of this Lease which shall prove to be invalid, void, or illegal shall in no way affect, impair or invalidate any other provision hereof and such other provision shall remain in full force and effect.

(xiii) Cumulative Remedies. No remedy or election hereunder shall be deemed exclusive but shall, whenever possible, be cumulative with all other remedies at law or in equity.

(xiv) Choice of Law. This Lease shall be governed by the laws of the State in which the Premises are located.

(xv) Attorneys' Fees. In the event of any action or proceeding brought by either party against the other under this Lease the prevailing party shall be entitled to recover for the fees of its attorneys in such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable as attorneys' fees. In addition, should it be necessary for Lessor to employ legal counsel to enforce any of the provisions herein contained, Tenant agrees to apy all attorneys' fees and court costs reasonably incurred.

(xvi) Sale of Premises by Lessor. In the event of any sale of the Premises by Lessor, Lessor shall be and is hereby entirely freed and relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease arising out of any act, occurrence or omission occurring after the consummation of such sale; and the purchaser, at such sale or any subsequent sale of the Premises shall be deemed, without any further agreement between the parties or their successors in interest or between the parties and any such purchaser, to have assumed and agreed to carry out any and all of the covenants and obligations of the Lessor under this Lease.

(xvii) Subordination, Attornment. Upon request of the Lessor, Tenant will in writing subordinate its rights hereunder to the lien of any mortgage or deed of trust, to any bank, insurance company or other lending institution, now or hereafter in force against the Premises, and to all advances made or hereafter to be made upon the security thereof.

In the event any proceedings are brought for foreclosure, or in the event of the exercise of the power of sale under any mortgage or deed of trust made by the Lessor covering the Premises, the Tenant shall attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as the Lessor under this Lease.

The provisions of this Articl to the contrary notwithstanding, and so long as Tenant is not in default hereunder, this Lease shall remain in full force and effect for the full term hereof.

(xviii) Notices. All notices and demands which may or are to be required or permitted to be given by either party on the other hereunder shall be in writing. All notices and demands by the Lessor to the Tenant shall be sent by United States Mail, postage prepaid, addressed to the

This is a certified true copy of the original document
by

Tenant at the Premises, and to the address hereinbelow, or to such other place as Tenant may from time to time designate in a notice to the Lessor. All notices and demands by the Lessor to the Tenant shall be sent by United States Mail, postage prepaid, addressed to Lessor at the address set forth herein, and to such other person or place as the Lessor may from time to time designate in a notice to the Tenant.

To Lessor at: 3636 Figueroa st Glendale CA 91206

To Tenant at: 400 N. Glenoaks Blvd, Burbank CA 91502

(xix) Tenant's Statement. Tenant shall at any time and from time to time, upon not less than three days prior written notice from Lessor, execute, acknowledge and deliver to Lessor a statement in writing (a) certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease as so modified is in full force and effect), and the date to which the rental and other charges are paid in advance, if any, and (b) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of the Lessor hereunder, or specifying such defaults if any are claimed, and (c) setting forth the date of commencement of rents and expiration of the term hereof. Any such statement may be relied upon by the prospective purchaser or encumbrancer of all or any portion of the real property of which the Premises are a part.

(xx) Authority of Tenant. If Tenant is a corporation, each individual executing this Lease on behalf of said corporation represents and warrants that he is duly authorized to execute and deliver this Lease on behalf of said corporation, in accordance with the bylaws of said corporation, and that this Lease is binding upon said corporation.

Lessee has option to extend the lease for two terms of five years lease provided that leasse is not in default and lessee has given 90 days written notice to exercise the option rent during the First option period shall be $2000 No/100 per month. Rent during Second option period shall be $2,200 A.H. Twenty 2 hundre per month

By Art Hagin 12-15-2006 Lessor Date — By ______ Tenant Date

______ Lessor Date — [signature] 12-15-2006 Tenant Date

BEACHWOOD ESCROW
This is a certified true copy of the original document
by ______

| | |
|---|---|
| In re: Art Hovsepian<br>Debtor(s). | CHAPTER 7<br>CASE NUMBER 2:10-bk-27883-VK |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **CHAPTER 7 TRUSTEE'S REPLY TO OBJECTIONS TO MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY; DECLARATION OF KRIKOR J. MESHEFEJIAN, ESQ. IN SUPPORT THEREOF** will be or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 1, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Glenn Ward Calsada glenn@calsadalaw.com
- John-patrick M Fritz jpf@lnbrb.com
- Vincent V Frounjian vvf@pacbell.net
- Rosendo Gonzalez rossgonzalez@earthlink.net
- Rosendo Gonzalez (TR) rgonzalez@ecf.epiqsystems.com, gabgarcia@earthlink.net
- Joe M Lozano notice@NBSDefaultServices.com
- Daren M Schlecter daren@schlecterlaw.com
- Lindsey L Smith lls@lnbrb.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Leon L Vickman lvickman@pacbell.net
- Edward M Wolkowitz emw@lnbrb.com

II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):
On **February 1, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Daren M. Schlecter, Esq.
Law Office of Daren M. Schlecter
1875 Century Park East, Suite 1000
Los Angeles, CA 90067

Glenn Ward Calsada, Esq.
9924 Reseda Blvd.
Northridge, CA 91324

III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 1, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

***By Attorney Service:***
Hon. Victoria S. Kaufman
United States Bankruptcy Court
255 East Temple Street, Ctrm 1675
Los Angeles, CA 90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| **February 1, 2011** | Stephanie Reichert | */s/ Stephanie Reichert* |
| *Date* | *Type Name* | *Signature* |